Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiffs
APRIL JIMENEZ-MENDEZ *et al.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ABRIL"APRIL" JIMENEZ-MENDEZ, An Individual, ARIANA JIMENEZ-MENDEZ, An Individual, INNA KHIMICH, An Individual, LISA CARVALHO, An Individual, an Individual, DINA CERNAVA, An Individual, and KSENIYA PARKHOTYUK, An Individual, | Case No.: |
| | **COMPLAINT FOR DAMAGES FOR FAILURE TO ACCOMMODATE RELIGIOUS BELIEFS AND RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]** |
| Plaintiff, | |
| v. | **JURY TRIAL REQUESTED** |
| OREGON HEALTH AND SCIENCE UNIVERSITY, A Public Corporation and Governmental Entity, and DOES 1 THROUGH 50, Inclusive, | |
| Defendants | |

Plaintiffs ABRIL "APRIL" JIMENEZ-MENDEZ, ARIANA JIMENEZ-MENDEZ, INNA KHIMICH, LISA CARVALHO, DINA CERNAVA, and KSENIYA PARKHOTYUK hereby allege as follows:

## PARTIES

1.      Plaintiffs are, and at all times relevant herein were, formerly employees of Defendant OREGON HEALTH AND SCIENCE UNIVERSITY ("OHSU") from various dates until October 2021 or later.

2.      Plaintiffs also are, and at all times relevant herein were, religious practitioners of varying denominations – most of them Christian – and thus members of a class of employees protected under Title VII of the federal Civil Rights Act of 1964 ("Title VII").  As permitted under Or. Admin. R. 333-019-1010(3)(a), Plaintiffs sought from Defendant OHSU religious exceptions from the State of Oregon's requirement that all healthcare workers in the state be vaccinated against COVID-19 (the "Vaccine Mandate" or the "Mandate").  Having prayerfully considered the matter, Plaintiffs objected to receiving COVID-19 vaccines because the manufacturers of all such vaccines then available in the United States at or near the time of the events giving rise to this case used cells from aborted babies in the production of the vaccines.  Plaintiffs held sincere religious convictions that benefiting from abortion through taking a vaccine which used cells from aborted babies in development, testing, and production was out of line with biblical principles.

3.      Defendant OHSU is, and at all times herein was, a public corporation and governmental entity performing governmental functions and exercising governmental powers, as indicated under Or. Rev. Stats. § 353.020.  OHSU is, and at all times relevant herein was, an employer as defined by Title VII.  OHSU is openly pro-abortion, and its Vaccine Exemption Review Committee (the "VERC")

openly expressed hostility toward certain religious views of employees who sought religious exemptions from the COVID-19 vaccination requirement, including those of Plaintiffs, declaring that those beliefs were unworthy of a religious exception.

4.      The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiffs, who therefore sue Defendants under such fictitious names.  Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiffs thereby, as herein alleged.  The DOES include members of the VERC, who are, and at all times relevant here in were, directly responsible for denying Plaintiffs' religious exemptions in violation of their constitutional rights.  Plaintiffs will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

5.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

6.      This Court has jurisdiction over all Defendants pursuant to 28 U.S.C. § 1331 because Plaintiffs' action arises under the constitution and laws of the United States.

7.      This Court may award the requested damages pursuant to 28 U.S.C. § 1343 and costs and attorneys' fees under 42 U.S.C. § 1988.

## VENUE

8.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

9.      Venue is proper in the Court's Portland Division because the events giving rise to this Complaint occurred in the County of Multnomah and all agents,

employees, or other persons working for, or in concert with, Defendant OHSU with regard to the events giving rise to this case are located in, employed in, and/or residents of the County of Multnomah.

### GENERAL ALLEGATIONS

10.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

11.    OHSU is Oregon's only state-run medical school and one of the few state-run universities in the United States devoted exclusively to educating doctors, nurses, pharmacists, and other healthcare professionals.  OHSU operates multiple hospitals in the Portland area in accordance with its healthcare-centered educational and clinical missions.

12.    OHSU is also openly in favor of abortion, which ends the life of an unborn child *in utero*.  In fact, on June 24, 2022 – the same date on which the Supreme Court overturned *Roe v. Wade*, the 1972 decision that made abortion legal nationwide, and declared that because there is no federal constitutional right to abortion, states are now free to decide for themselves whether abortion will be lawful within their borders – OHSU issued a press release headlined "Abortion Is Essential Healthcare" and affirmed its commitment to providing abortions and related services.  *See* Attached **Exhibit "A"** [a copy of said press release].[1]

13.    In August 2021, roughly 18 months after COVID-19 first arrived in Oregon, the Oregon Health Authority ("OHA"), pursuant to an executive order from Oregon's then-governor, Katherine "Kate" Brown ("Gov. Brown"), enacted the Vaccine Mandate, which required most healthcare workers employed in

---

[1] Ironically, the press release also declares OHSU's commitment "to ensuring a ***respectful, welcoming and <u>inclusive</u> place*** to learn, ***<u>work</u>*** and receive care for all people regardless of gender, race, ***<u>religion</u>*** and sexual orientation" (emphasis added).  As the facts stated herein indicate, OHSU has failed to live up to this stated commitment.

Oregon to be vaccinated against COVID-19 by October 18, 2021.  *See* Or. Admin. R. 333-019-1010.  However, the Mandate allowed healthcare workers to seek, and the hospitals, clinics, and other organizations who employed them to grant, religious exemptions from the vaccination requirement.  *Id.*, subsections (3)-(4).

14.    The Vaccine Mandate also expressly stated that "[n]othing in this rule is intended to prohibit schools or school-based programs … from … ***Complying with Title VII of the Civil Rights Act, and state law equivalents***, for individuals ***<u>unable</u>*** to be vaccinated due to … a sincerely held religious belief."  Or. Admin. R. 333-019-1010(5)(a) (emphasis added).

15.    In accordance with the OHA's Vaccine Mandate, OHSU required all employees to either be vaccinated against COVID-19 or be granted a religious or medical exception by October 18, 2021.  However, OHSU warned Plaintiffs and other employees that the VERC "expects that very few of the submitted requests for religious exemptions will be approved."  *See* Attached **Exhibit "B"** [an e-mail from OHSU sent en masse to its employees in which OHSU declares, "Narrow exceptions process will help keep OHSU and the community safe"].

16.    Plaintiff ABRIL "APRIL" JIMENEZ-MENDEZ ("APRIL JIMENEZ-MENDEZ") is, and at all times relevant herein was, a Patient Resource Specialist for OHSU's Knight Cardiovascular Institute for roughly one year.

17.    Plaintiff ARIANA JIMENEZ-MENDEZ ("ARIANA JIMENEZ-MENDEZ," and collectively with APRIL JIMENEZ-MENDEZ the "Jimenez-Mendez Sisters") is, and at all times relevant herein, was a PAS Specialist Lead at OHSU Dental Clinics for five years.

18.    Plaintiff INNA KHIMICH ("KHIMICH") is, and at all times relevant herein was, medical assistant who worked for OHSU for about 14 years, from March 2008 until March 24 or 25, 2022.  Like APRIL JIMENEZ-MENDEZ,

KHIMICH worked remotely once the COVID-19 pandemic began, as KHIMICH's duties involved answering phones, scheduling, and faxing medical records – none of which required her to work in a patient-facing position.

19.    Plaintiff LISA CARVALHO ("CARVALHO") is, and at all times relevant herein was, a Managed Care Coordinator who worked for OHSU for about four years, from July 2017 until October 2021.

20.    Plaintiff DINA CERNAVA ("CERNAVA") is, and at all times relevant herein was, a certified nursing assistant/health unit coordinator who worked for OHSU for about 15 years, from October 2006 until December 2, 2021.

21.    Plaintiff KSENIYA PARKHOTYUK ("PARKHOTYUK") is, and at all times relevant herein was, a respiratory care practitioner who worked in OHSU's pediatric unit for approximately eight years, from 2012 through 2021, with a one-year break in 2013-14.  Her duties included assisting neonatal, infant, and pediatric patients with various therapies and emergency-related treatments, including intubation, ventilation, and cardiopulmonary resuscitation.

22.    Plaintiffs were qualified to serve in their positions and were exemplary employees throughout their tenure at OHSU.

23.    Plaintiffs are also, and at all times relevant herein were, religious practitioners of varying denominations – most of them Christian – who oppose abortion on religious grounds, as they believe life begins in the womb and that, accordingly, abortion is the taking of a human life – i.e., murder.  *See* Attached **Exhibit "C"** [copies of Plaintiffs' religious exemption requests].

24.    Because they believe abortion harms innocent human life, Plaintiffs likewise oppose, and at all times relevant herein opposed, receiving vaccines whose manufacturers used cell lines from aborted fetuses in the vaccines' testing and production.  *See* Ex. "C."

25.    When researching the COVID-19 vaccines currently available in the United States at the time the OHA issued its Vaccine Mandate, Plaintiffs discovered that the vaccines' manufacturers used cells from aborted babies either in the testing and development of the vaccines or in the vaccines themselves.

26.    Based on much prayer and Bible study, Plaintiffs determined that they were unable, in accordance with Christian principles, to take a COVID-19 vaccine. Accordingly, as allowed under Or. Admin. R. 333-019-1010(3)(a), on or about September 16, 2021, Plaintiffs submitted religious exception requests to OHSU. *See* Ex. "C." Plaintiffs submitted their requests before OHSU's imposed deadline of September 20, 2021. *Id.*

27.    In their religious exception requests, Plaintiffs provided multiple reasons why their faith prohibited them from taking COVID-19 vaccines. *See* Ex. "C." To wit:

    a.    The Jimenez-Mendez Sisters, who lived at the same address at the time of the events giving rise to this case and attended the same church, both asserted that their "religious belief that requiring a vaccine that uses aborted fetal cells lines (sic) in the development or testing of the vaccine my sincerely held religious beliefs regarding the sanctity and protection of unborn children."

    b.    Like the Jimenez-Mendez Sisters, CERNAVA is religiously opposed to the use of an aborted baby's body to develop a vaccine contrary to God's commands. CERNAVA also believes 1 Corinthians 6:19's statement concerning the body being the temple of the Holy Spirit means that she can only put things in her body that God leads her to, and she holds a sincere religious belief that it is against God's to receive a COVID-19 vaccine.

c.  KHIMICH provided a letter from her pastor stating her belief that
    "abortion is the murder of human beings and murder is a sin.  Her
    faith establishes a firmly held religious conviction specifically
    against any vaccinations … devised from the research and/or use
    of aborted human tissue."  Like CERNAVA, KHIMICH also
    asserted via her pastor's letter that her body is a temple of the Holy
    Spirit and it is her "God-given responsibility and requirement … to
    protect the physical integrity of [her] body from unclean food and
    injections."  Via the words "See attached form" written on
    OHSU's provided religious exception request form, KHIMICH
    adopted her pastor's words as her own.

d.  Plaintiff CARVALHO is a member of the New Earth Ascending
    ("NEA") interfaith church.  Like KHIMICH, CARVALHO
    provided to OHSU a letter from her church leaders, the statements
    in which she adopted as her own, as indicated by her signature
    affirming her belief in NEA's basic principles on a card included
    with the letter.  Among those principles is that of "non-
    violence/non-harming," which requires NEA members "to be
    certain that when utilizing medical protocols and treatments that
    the research, development, testing, and production of medical
    treatments and protocols do not harm humans or animals.  This is
    especially true with inoculations/vaccinations that use human or
    animal aborted fetal cell lines in their testing and production."

e.  Plaintiff PARKHOTYUK believes, and at all times relevant herein
    believed, abortion, ending human life in the womb, is contrary to
    the biblical teachings in Jeremiah 1:4-5 and Psalm 139:13-16 and

that because fetal cell lines derived from abortions were used in
the testing of available COVID-19 vaccines, taking such a vaccine
would violate her sincerely held religious beliefs regarding the
sanctity of life and protection of pre-born children.  Furthermore,
PARKHOTYUK believes that according to Genesis 1:26, Romans
12:1, and 1 Corinthians 3:16, 6:20, and 10:31, Christians must
honor and care for the body God gave them and not defile it with
substances that God has deemed unclean.

28.     KHIMICH also had medical reasons for not wanting to receive a
COVID-19 vaccine: She was nine months pregnant at the time the OHA issued its
Vaccine Mandate.  For reasons both religious and medical, she did not want to
harm her unborn child, and her doctors had advised her not to receive a COVID-19
vaccine due to the risk of harm to her baby.  KHIMICH informed OHSU of this.

29.     Still, OHSU not only mandated that KHIMICH receive a COVID-19
vaccine, OHSU mandated that she come in and train a colleague at a time when
KHIMICH was severely immunocompromised and extremely close to her baby's
due date.  Unbeknownst to her, the colleague had COVID-19.  As a result of her
exposure to COVID-19, KHIMICH became extremely sick, was hospitalized, and
ultimately lost her baby.

30.     On or about October 4, 2021, OHSU notified Plaintiffs via e-mail that
the VERC had rejected their religious exception requests.  Copies of the e-mails
and letters issued to each Plaintiff informing them of their rejected request are
attached hereto as **Exhibit "D."**

31.     In denying Plaintiffs' religious exception request, the VERC made no
assertion that OHSU could not accommodate their sincerely held religious beliefs
due to undue hardship.  *See* Ex. "D."  Rather, the VERC deemed several religious

beliefs to be unworthy of accommodation.  Those beliefs were "arguments for free will, religious freedom or against compulsion," "concerns over vaccine safety or content," "an objection to the vaccine on the basis of fetal cell concerns, in the vaccines or in testing and development," "a personal revelation from God about the vaccine," "an objection to the COVID vaccine based upon bodily integrity of sanctity and/or a belief that the vaccine is unclean."  Plaintiffs held such religious objections.  *See* Ex. "C."

32.     The VERC's rejection e-mail also stated in boldfaced letters, "OHSU values you and hopes you will consider getting vaccinated in order to remain an OHSU member."  *See* Ex. "D."  This statement, at best, ignores or demonstrates OHSU's extreme lack of sensitivity toward the religious convictions that moved Plaintiffs to seek religious exceptions – convictions that no true religious adherent, including Plaintiffs, could abandon, even if it meant keeping their jobs.  At worst, OHSU's statement demonstrates hostility toward beliefs like Plaintiffs' by pressuring them to choose between their sincerely held religious convictions and the promise of steady employment – a choice Title VII and the First Amendment explicitly prohibit government employers from requiring their employees to make.

33.     Accommodations that would have allowed Plaintiffs to continue working despite not having received COVID-19 vaccines were available:

> a. OHSU could easily have accommodated Plaintiffs APRIL JIMENEZ-MENDEZ and KHIMICH by allowing them to continue working remotely, as both them were already doing prior to their placement on unpaid leave on or about October 18, 2021. By working remotely, APRIL JIMENEZ-MENDEZ and KHIMICH would have posed no danger to OHSU's other employees or patients due to being unvaccinated.

      b.  Accommodations for those Plaintiffs who were unable to work remotely – ARIANA JIMENEZ-MENDEZ, CERNAVA, CARVALHO, and PARKHOTYUK – were also available.  OHSU could have instructed those Plaintiffs to continue following COVID-19 mitigation strategies already in place which would not have created any undue burden for OHSU.  Examples of such protocols include masking, social distancing, and regular testing.  OHSU could also have taken into consideration whether or not Plaintiffs had natural immunity and allowed them to continue working with the same amount of protection from COVID-19 as their vaccinated colleagues.

34.    OHSU ultimately fired most Plaintiffs on or about December 2, 2021. KHIMICH's placement on unpaid leave and then termination in March 2022 came later due to extenuating medical circumstances.

35.    OHSU fired Plaintiffs despite some Plaintiffs working remotely, having natural immunity, and sending follow-up e-mails expressing their desire to continue their employment without being forced to compromise on their beliefs, appealing to OHSU's dedication to inclusivity, and proposing accommodations to alleviate any of burden OHSU may incur in keeping them employed.

36.    Due to OHSU's termination of their employment and difficulty in obtaining comparable employment with another employer, Plaintiffs have suffered the following monetary damages:

      a.  APRIL JIMENEZ-MENDEZ was making approximately $25,000 per year at $22.00 per hour.

      b.  ARIANA JIMENEZ-MENDEZ was making approximately $40,000 per year at $23.77 per hour.

    c.   KHIMICH was earning between $3,600 to $4,000 per month, depending on how many hours worked.  She lost her Public Employee Retirement System plan – including the six (6) percent matching contribution she received from OHSU – as well as life insurance benefits for herself, her spouse, and her dependents.  She is now earning about 25% less income without benefits.  She also had to pay funeral expenses for the baby she lost when OHSU mandated that she come in at a time when it was physically risky – to herself and her baby – for her to do so.

    d.   CARVALHO was making about $45,000 per year.  She was forced to take out all $15,000 ($11,000 after taxes) in her 401k retirement to make ends meet, and lost her medical insurance.

    e.   CERNAVA has lost wages in the neighborhood of $5,400 per month, or $68,400 annually.  After OHSU fired her, she earned $900 from a temporary job working for her brother and another $684 in unemployment benefits for finding a job with another employer.  CERNAVA is earning $2.26 per hour less in her current job than she was at OHSU.

    f.   PARKHOTYUK lost wages in the amount of approximately $4,800 per month.  She also lost $900 per month in health insurance benefits and stopped receiving payments to her 401(k) retirement account.

37.   Due to OHSU's termination of their employment, Plaintiffs have also suffered noneconomic damages in the form of anxiety, depression, and/or emotional distress – all of which manifested itself in various ways, including but not limited to insomnia, nightmares, weight loss or gain, high blood pressure,

fatigue, panic attacks, headaches, migraines, nausea, and vomiting.  Part and parcel of these symptoms are the strain on familial, romantic, or other relationships due to financial stress caused by Plaintiffs' loss of employment.

38.    As a condition of filing the herein lawsuit, Plaintiffs each obtained right-to-sue letters from the Equal Employment Opportunity Commission.  Those letters are attached hereto as **Exhibit "E."**

39.    Attached hereto as **Exhibit "F"** are printouts from the website TimeandDate.com showing when the 90-day statute of limitations set forth in each right-to-sue letter is set to expire.  Plaintiffs have attached these printouts hereto as proof that they have timely filed this lawsuit.

## FIRST CAUSE OF ACTION:
### Violation of Title VII – Failure to Accommodate
### [42 U.S.C. § 2000e-2]
### Against Defendant OHSU

40.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

41.    Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

42.    For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

43.    Defendant OHSU is, and at all times relevant herein was, an employer as defined by Title VII.

44.    The term "religion," for Title VII's purposes, "includes ***all*** aspects of religious observance and practice, ***as well as belief***[.]"  42 U.S.C. § 2000e(j) (emphasis added).

45.    As religious practitioners, Plaintiffs belong to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

46.    Plaintiffs hold sincere religious beliefs that due to COVID-19 vaccine manufacturers' use of cells from aborted babies in the testing, development, and production of the vaccines, receiving the vaccination would make them complicit in something they, because of their sincerely held religious beliefs, deem impermissible.

47.    Plaintiffs' bona fide religious beliefs conflicted with their employment-related duty to receive a COVID-19 vaccine.  *See* Exs. "C"-"K."

48.    Plaintiffs informed their employer, Defendant OHSU, of the conflict between their religious beliefs and employment-related duties.  *See* Exs. "C"-"K."

49.    Defendant OHSU subjected Plaintiffs to discriminatory treatment by (1) declaring their beliefs unworthy of a religious exception, (2) placing them on unpaid leave on or about October 18, 2021, and (3) by firing them on or about December 2, 2021.  *See* Ex. "N."

50.    Defendant OHSU made no attempt to accommodate Plaintiffs' bona fide religious belief, as Title VII requires.

51.    Defendant OHSU never made any assertion to Plaintiffs that OHSU would incur undue hardship by accommodating Plaintiffs' beliefs.

52.    Defendant OHSU could, and should, have easily accommodated Plaintiffs' sincere religious beliefs by allowing Plaintiffs to continue working, whether remotely (in the cases of APRIL JIMENEZ-MENDEZ and KHIMICH) or continuing effective mitigation strategies.  Because Plaintiffs had already been working remotely or with COVID-19 mitigation procedures for the duration of the pandemic, there was no reason whatsoever why OHSU could not have allowed them to do so for the foreseeable future, if not on a permanent basis.

53.    OHSU offered no such accommodations to Plaintiffs, opting to take adverse employment actions against them instead.

54.    Animus toward Plaintiffs' specific religious beliefs is truly what motivated Defendant OHSU to get rid of Plaintiffs, any assertion by OHSU to the contrary notwithstanding.

55.    Based on the foregoing, Defendant OHSU has unlawfully discriminated against Plaintiffs in violation of Title VII.

<u>SECOND CAUSE OF ACTION:</u>
**Violation of Title VII – Religious Discrimination**
**[42 U.S.C. § 2000e-2]**
**Against Defendant OHSU**

56.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

57.     "To establish a prima facie case of religious discrimination, [Plaintiff] must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) '***either*** that similarly situated individuals outside her protected class were treated differently, ***or*** other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" *Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022 (D. Or. 2008) (emphasis in the original) [quoting *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743-44 (9th Cir. 2004)].

58.    As religious practitioners of varying denominations, Plaintiffs belong to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

59.    Plaintiffs were qualified for their various positions with OHSU.

60.    Defendant OHSU subjected Plaintiffs to multiple adverse employment actions – first by threatening to place them on unpaid leave and/or terminate their employment if they did not receive a COVID-19 vaccine, then by

placing them on unpaid leave on or about October 18, 2021, and ultimately by firing them on December 2, 2021.  *See* Ex. "N."

61.    Defendant OHSU treated similarly situated individuals outside Plaintiffs' protected class differently: Implicit in OHSU's statement to employees that the VERC "expects that very few of the submitted requests for religious exemptions will be approved" is that ***some*** exceptions would be approved.  *See* Ex. "B" [OHSU's declaration that "(n)arrow exceptions process will help keep OHSU and the community safe"].  The fact that OHSU circulated a list of beliefs it deemed unacceptable – i.e., that were unworthy of accommodation – implies that only those individuals who held the right beliefs would receive accommodations.

62.    At the very least, the facts that (1) OHSU circulated a list of beliefs it deemed unacceptable – i.e., that were unworthy of accommodation – and (2) denied Plaintiffs religious exceptions because they had those beliefs are circumstances that give rise to an inference of religious discrimination.

63.    Based on the foregoing, Defendant OHSU has committed religious discrimination against Plaintiffs in violation of Title VII.

### THIRD CAUSE OF ACTION:
**Violation of Constitutionally Protected Freedom of Religion**
**[U.S. Const. amend. I; 42 U.S.C. § 1983]**
**Against DOES 1-50**

64.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

65.    Under 42 U.S.C. § 1983, anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

66.     Under 42 U.S.C. § 1983, state actors like the VERC's members –
whose identities have yet to be ascertained – forfeit their qualified immunity from
liability when, acting in their official capacities, they deliberately infringe on
constitutional rights: "[A] state official who violates federal law '*is in that case
stripped of his official or representative character and is subjected in his person
to the consequences* of his individual conduct.'"  *Scheuer v. Rhodes*, 416 U.S. 232,
237 (1974) (emphasis added).

67.     The Free Exercise Clause of the U.S. Constitution's First
Amendment, made applicable to states via the Fourteenth Amendment, prohibits
state governments from infringing on individuals' freedom of religion.  The
Fourteenth Amendment prohibits state governments from depriving any person of
liberty without due process of law.  U.S. Const. amend. XIV, § 1.

68.     "The Free Exercise Clause protects against government hostility that
is masked as well as overt."  *Church of the Lukumi Babalu Aye v. City of Hialeah*,
508 U.S. 520, 534 (1993) (*Lukumi*).  Acting under color of state law, the VERC's
members – whose identities have yet to be ascertained – expressed overt hostility
toward the religious beliefs of certain OHSU employees, including and especially
Plaintiffs, by declaring which religious beliefs were worthy of religious exceptions
from Gov. Brown's Vaccine Mandate and which religious beliefs were not.

69.     Furthermore, "[w]hen the power, prestige and financial support of
government is placed behind" – or, for that matter, against – "a particular religious
belief, *the indirect coercive pressure upon religious (individuals) to conform to
the prevailing approved religion is plain*."  *Sch. Dist. of Abington Twp. v.
Schempp*, 374 U.S. 203, 221 (1963) (*Schempp*) (emphasis added).  Acting under
color of state law, the VERC effectively declared that because multiple high-
profile religious organizations had expressed approval of COVID-19 vaccines

Complaint
17

despite their connection to abortion, OHSU employees belonging to those organizations' faith essentially had no excuse for not receiving a COVID-19 vaccine. In so doing, the VERC's overstepped their constitutional bounds, pressuring Plaintiffs to conform to the prevailing approved religion.

70.     Acting under color of state law, the VERC's members effectively penalized Plaintiffs for adhering to their sincere, religiously-based objections to receiving a COVID-19 vaccine by threatening to fire, and then firing, Plaintiffs. The VERC's members forced Plaintiffs to choose between the government-provided benefit of continued employment with OHSU and following their religious beliefs. This, the U.S. Constitution prohibits.

71.     Even assuming Defendant OHSU had a compelling interest in halting the spread of COVID-19 to its employees and patients, the VERC's members could – and should – have reasonably accommodated Plaintiffs' beliefs and let them keep working. The VERC's actions in establishing and enforcing a discriminatory religious exception were not narrowly tailored and cannot survive strict scrutiny under the First Amendment.

72.     Based on the foregoing, VERC's members, identified herein as DOES 1-50, have deprived Plaintiffs of their constitutionally protected freedom of religion and should be held accountable accordingly.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

### **ON ALL CAUSES OF ACTION:**

1.     For declaratory and injunctive relief against the members of the VERC, as stated *supra*;

2.     For economic damages in an amount according to proof at trial;

3.     For non-economic damages in an amount according to proof at trial;

4.      For punitive damages in an amount according to proof at trial;

5.      For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

6.      For such other and further relief as the Court may deem proper.


Dated: August 15, 2023                    PACIFIC JUSTICE INSTITUTE

                                          __/s/ *RAY D. HACKE*_____
                                          Ray D. Hacke
                                          Attorneys for Plaintiffs
                                          APRIL JIMENEZ-MENDEZ *et al.*

Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiffs
APRIL JIMENEZ-MENDEZ *et al.*

UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ABRIL"APRIL" JIMENEZ-MENDEZ, An Individual, ARIANA JIMENEZ-MENDEZ, An Individual, INNA KHIMICH, An Individual, LISA CARVALHO, An Individual, An Individual, DINA CERNAVA, An Individual, and KSENIYA PARKHOTYUK, An Individual,<br><br>Plaintiff,<br><br>v.<br><br>OREGON HEALTH AND SCIENCE UNIVERSITY, A Public Corporation and Governmental Entity, and DOES 1 THROUGH 50, Inclusive,<br><br>Defendants | Case No.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES FOR FAILURE TO ACCOMMODATE RELIGIOUS BELIEFS AND RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**<br><br>**JURY TRIAL REQUESTED** |

Plaintiffs ABRIL "APRIL" JIMENEZ-MENDEZ, ARIANA JIMENEZ-MENDEZ, INNA KHIMICH, LISA CARVALHO, DINA CERNAVA, and KSENIYA PARKHOTYUK hereby allege as follows:

## PARTIES

1.      Plaintiffs are, and at all times relevant herein were, formerly employees of Defendant OREGON HEALTH AND SCIENCE UNIVERSITY ("OHSU") from various dates until October 2021 or later.

2.      Plaintiffs also are, and at all times relevant herein were, religious practitioners of varying denominations – most of them Christian – and thus members of a class of employees protected under Title VII of the federal Civil Rights Act of 1964 ("Title VII").  As permitted under Or. Admin. R. 333-019-1010(3)(a), Plaintiffs sought from Defendant OHSU religious exceptions from the State of Oregon's requirement that all healthcare workers in the state be vaccinated against COVID-19 (the "Vaccine Mandate" or the "Mandate").  Having prayerfully considered the matter, Plaintiffs objected to receiving COVID-19 vaccines because the manufacturers of all such vaccines then available in the United States at or near the time of the events giving rise to this case used cells from aborted babies in the production of the vaccines.  Plaintiffs held sincere religious convictions that benefiting from abortion through taking a vaccine which used cells from aborted babies in development, testing, and production was out of line with biblical principles.

3.      Defendant OHSU is, and at all times herein was, a public corporation and governmental entity performing governmental functions and exercising governmental powers, as indicated under Or. Rev. Stats. § 353.020.  OHSU is, and at all times relevant herein was, an employer as defined by Title VII.  OHSU is openly pro-abortion, and its Vaccine Exemption Review Committee (the "VERC")

openly expressed hostility toward certain religious views of employees who sought religious exemptions from the COVID-19 vaccination requirement, including those of Plaintiffs, declaring that those beliefs were unworthy of a religious exception.

4.      The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiffs, who therefore sue Defendants under such fictitious names.  Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiffs thereby, as herein alleged.  The DOES include members of the VERC, who are, and at all times relevant here in were, directly responsible for denying Plaintiffs' religious exemptions in violation of their constitutional rights.  Plaintiffs will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

5.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

6.      This Court has jurisdiction over all Defendants pursuant to 28 U.S.C. § 1331 because Plaintiffs' action arises under the constitution and laws of the United States.

7.      This Court may award the requested damages pursuant to 28 U.S.C. § 1343 and costs and attorneys' fees under 42 U.S.C. § 1988.

## VENUE

8.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

9.      Venue is proper in the Court's Portland Division because the events giving rise to this Complaint occurred in the County of Multnomah and all agents,

employees, or other persons working for, or in concert with, Defendant OHSU with regard to the events giving rise to this case are located in, employed in, and/or residents of the County of Multnomah.

## GENERAL ALLEGATIONS

10.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

11.    OHSU is Oregon's only state-run medical school and one of the few state-run universities in the United States devoted exclusively to educating doctors, nurses, pharmacists, and other healthcare professionals.  OHSU operates multiple hospitals in the Portland area in accordance with its healthcare-centered educational and clinical missions.

12.    OHSU is also openly in favor of abortion, which ends the life of an unborn child *in utero*.  In fact, on June 24, 2022 – the same date on which the Supreme Court overturned *Roe v. Wade*, the 1972 decision that made abortion legal nationwide, and declared that because there is no federal constitutional right to abortion, states are now free to decide for themselves whether abortion will be lawful within their borders – OHSU issued a press release headlined "Abortion Is Essential Healthcare" and affirmed its commitment to providing abortions and related services.  *See* Attached **Exhibit "A"** [a copy of said press release].[1]

13.    In August 2021, roughly 18 months after COVID-19 first arrived in Oregon, the Oregon Health Authority ("OHA"), pursuant to an executive order from Oregon's then-governor, Katherine "Kate" Brown ("Gov. Brown"), enacted the Vaccine Mandate, which required most healthcare workers employed in

---

[1] Ironically, the press release also declares OHSU's commitment "to ensuring a ***respectful, welcoming and <u>inclusive</u> place*** to learn, ***<u>work</u>*** and receive care for all people regardless of gender, race, ***religion*** and sexual orientation" (emphasis added).  As the facts stated herein indicate, OHSU has failed to live up to this stated commitment.

Oregon to be vaccinated against COVID-19 by October 18, 2021.  *See* Or. Admin. R. 333-019-1010.  However, the Mandate allowed healthcare workers to seek, and the hospitals, clinics, and other organizations who employed them to grant, religious exemptions from the vaccination requirement.  *Id.*, subsections (3)-(4).

14.    The Vaccine Mandate also expressly stated that "[n]othing in this rule is intended to prohibit schools or school-based programs … from … ***Complying with Title VII of the Civil Rights Act, and state law equivalents***, for individuals ***unable*** to be vaccinated due to … a sincerely held religious belief."  Or. Admin. R. 333-019-1010(5)(a) (emphasis added).

15.    In accordance with the OHA's Vaccine Mandate, OHSU required all employees to either be vaccinated against COVID-19 or be granted a religious or medical exception by October 18, 2021.  However, OHSU warned Plaintiffs and other employees that the VERC "expects that very few of the submitted requests for religious exemptions will be approved."  *See* Attached **Exhibit "B"** [an e-mail from OHSU sent en masse to its employees in which OHSU declares, "Narrow exceptions process will help keep OHSU and the community safe"].

16.    Plaintiff ABRIL "APRIL" JIMENEZ-MENDEZ ("APRIL JIMENEZ-MENDEZ") is, and at all times relevant herein was, a Patient Resource Specialist for OHSU's Knight Cardiovascular Institute for roughly one year.

17.    Plaintiff ARIANA JIMENEZ-MENDEZ ("ARIANA JIMENEZ-MENDEZ," and collectively with APRIL JIMENEZ-MENDEZ the "Jimenez-Mendez Sisters") is, and at all times relevant herein, was a PAS Specialist Lead at OHSU Dental Clinics for five years.

18.    Plaintiff INNA KHIMICH ("KHIMICH") is, and at all times relevant herein was, medical assistant who worked for OHSU for about 14 years, from March 2008 until March 24 or 25, 2022.  Like APRIL JIMENEZ-MENDEZ,

KHIMICH worked remotely once the COVID-19 pandemic began, as KHIMICH's duties involved answering phones, scheduling, and faxing medical records – none of which required her to work in a patient-facing position.

19.    Plaintiff LISA CARVALHO ("CARVALHO") is, and at all times relevant herein was, a Managed Care Coordinator who worked for OHSU for about four years, from July 2017 until October 2021.

20.    Plaintiff DINA CERNAVA ("CERNAVA") is, and at all times relevant herein was, a certified nursing assistant/health unit coordinator who worked for OHSU for about 15 years, from October 2006 until December 2, 2021.

21.    Plaintiff KSENIYA PARKHOTYUK ("PARKHOTYUK") is, and at all times relevant herein was, a respiratory care practitioner who worked in OHSU's pediatric unit for approximately eight years, from 2012 through 2021, with a one-year break in 2013-14.  Her duties included assisting neonatal, infant, and pediatric patients with various therapies and emergency-related treatments, including intubation, ventilation, and cardiopulmonary resuscitation.

22.    Plaintiffs were qualified to serve in their positions and were exemplary employees throughout their tenure at OHSU.

23.    Plaintiffs are also, and at all times relevant herein were, religious practitioners of varying denominations – most of them Christian – who oppose abortion on religious grounds, as they believe life begins in the womb and that, accordingly, abortion is the taking of a human life – i.e., murder.  *See* Attached **Exhibit "C"** [copies of Plaintiffs' religious exemption requests].

24.    Because they believe abortion harms innocent human life, Plaintiffs likewise oppose, and at all times relevant herein opposed, receiving vaccines whose manufacturers used cell lines from aborted fetuses in the vaccines' testing and production.  *See* Ex. "C."

25.     When researching the COVID-19 vaccines currently available in the United States at the time the OHA issued its Vaccine Mandate, Plaintiffs discovered that the vaccines' manufacturers used cells from aborted babies either in the testing and development of the vaccines or in the vaccines themselves.

26.     Based on much prayer and Bible study, Plaintiffs determined that they were unable, in accordance with Christian principles, to take a COVID-19 vaccine. Accordingly, as allowed under Or. Admin. R. 333-019-1010(3)(a), on or about September 16, 2021, Plaintiffs submitted religious exception requests to OHSU. *See* Ex. "C."  Plaintiffs submitted their requests before OHSU's imposed deadline of September 20, 2021.  *Id.*

27.     In their religious exception requests, Plaintiffs provided multiple reasons why their faith prohibited them from taking COVID-19 vaccines.  *See* Ex. "C."  To wit:

      a.  The Jimenez-Mendez Sisters, who lived at the same address at the time of the events giving rise to this case and attended the same church, both asserted that their "religious belief that requiring a vaccine that uses aborted fetal cells lines (sic) in the development or testing of the vaccine my sincerely held religious beliefs regarding the sanctity and protection of unborn children."

      b.  Like the Jimenez-Mendez Sisters, CERNAVA is religiously opposed to the use of an aborted baby's body to develop a vaccine contrary to God's commands.  CERNAVA also believes 1 Corinthians 6:19's statement concerning the body being the temple of the Holy Spirit means that she can only put things in her body that God leads her to, and she holds a sincere religious belief that it is against God's to receive a COVID-19 vaccine.

c. KHIMICH provided a letter from her pastor stating her belief that "abortion is the murder of human beings and murder is a sin.  Her faith establishes a firmly held religious conviction specifically against any vaccinations … devised from the research and/or use of aborted human tissue."  Like CERNAVA, KHIMICH also asserted via her pastor's letter that her body is a temple of the Holy Spirit and it is her "God-given responsibility and requirement … to protect the physical integrity of [her] body from unclean food and injections."  Via the words "See attached form" written on OHSU's provided religious exception request form, KHIMICH adopted her pastor's words as her own.

d. Plaintiff CARVALHO is a member of the New Earth Ascending ("NEA") interfaith church.  Like KHIMICH, CARVALHO provided to OHSU a letter from her church leaders, the statements in which she adopted as her own, as indicated by her signature affirming her belief in NEA's basic principles on a card included with the letter.  Among those principles is that of "non-violence/non-harming," which requires NEA members "to be certain that when utilizing medical protocols and treatments that the research, development, testing, and production of medical treatments and protocols do not harm humans or animals.  This is especially true with inoculations/vaccinations that use human or animal aborted fetal cell lines in their testing and production."

e. Plaintiff PARKHOTYUK believes, and at all times relevant herein believed, abortion, ending human life in the womb, is contrary to the biblical teachings in Jeremiah 1:4-5 and Psalm 139:13-16 and

that because fetal cell lines derived from abortions were used in the testing of available COVID-19 vaccines, taking such a vaccine would violate her sincerely held religious beliefs regarding the sanctity of life and protection of pre-born children. Furthermore, PARKHOTYUK believes that according to Genesis 1:26, Romans 12:1, and 1 Corinthians 3:16, 6:20, and 10:31, Christians must honor and care for the body God gave them and not defile it with substances that God has deemed unclean.

28.    KHIMICH also had medical reasons for not wanting to receive a COVID-19 vaccine: She was nine months pregnant at the time the OHA issued its Vaccine Mandate. For reasons both religious and medical, she did not want to harm her unborn child, and her doctors had advised her not to receive a COVID-19 vaccine due to the risk of harm to her baby. KHIMICH informed OHSU of this.

29.    Still, OHSU not only mandated that KHIMICH receive a COVID-19 vaccine, OHSU mandated that she come in and train a colleague at a time when KHIMICH was severely immunocompromised and extremely close to her baby's due date. Unbeknownst to her, the colleague had COVID-19. As a result of her exposure to COVID-19, KHIMICH became extremely sick, was hospitalized, and ultimately lost her baby.

30.    On or about October 4, 2021, OHSU notified Plaintiffs via e-mail that the VERC had rejected their religious exception requests. Copies of the e-mails and letters issued to each Plaintiff informing them of their rejected request are attached hereto as **Exhibit "D."**

31.    In denying Plaintiffs' religious exception request, the VERC made no assertion that OHSU could not accommodate their sincerely held religious beliefs due to undue hardship. *See* Ex. "D." Rather, the VERC deemed several religious

beliefs to be unworthy of accommodation.  Those beliefs were "arguments for free will, religious freedom or against compulsion," "concerns over vaccine safety or content," "an objection to the vaccine on the basis of fetal cell concerns, in the vaccines or in testing and development," "a personal revelation from God about the vaccine," "an objection to the COVID vaccine based upon bodily integrity of sanctity and/or a belief that the vaccine is unclean."  Plaintiffs held such religious objections.  *See* Ex. "C."

32.    The VERC's rejection e-mail also stated in boldfaced letters, "OHSU values you and hopes you will consider getting vaccinated in order to remain an OHSU member."  *See* Ex. "D."  This statement, at best, ignores or demonstrates OHSU's extreme lack of sensitivity toward the religious convictions that moved Plaintiffs to seek religious exceptions – convictions that no true religious adherent, including Plaintiffs, could abandon, even if it meant keeping their jobs.  At worst, OHSU's statement demonstrates hostility toward beliefs like Plaintiffs' by pressuring them to choose between their sincerely held religious convictions and the promise of steady employment – a choice Title VII and the First Amendment explicitly prohibit government employers from requiring their employees to make.

33.    Accommodations that would have allowed Plaintiffs to continue working despite not having received COVID-19 vaccines were available:

a. OHSU could easily have accommodated Plaintiffs APRIL JIMENEZ-MENDEZ and KHIMICH by allowing them to continue working remotely, as both them were already doing prior to their placement on unpaid leave on or about October 18, 2021. By working remotely, APRIL JIMENEZ-MENDEZ and KHIMICH would have posed no danger to OHSU's other employees or patients due to being unvaccinated.

b. Accommodations for those Plaintiffs who were unable to work remotely – ARIANA JIMENEZ-MENDEZ, CERNAVA, CARVALHO, and PARKHOTYUK – were also available.  OHSU could have instructed those Plaintiffs to continue following COVID-19 mitigation strategies already in place which would not have created any undue burden for OHSU.  Examples of such protocols include masking, social distancing, and regular testing.  OHSU could also have taken into consideration whether or not Plaintiffs had natural immunity and allowed them to continue working with the same amount of protection from COVID-19 as their vaccinated colleagues.

34.    OHSU ultimately fired most Plaintiffs on or about December 2, 2021. KHIMICH's placement on unpaid leave and then termination in March 2022 came later due to extenuating medical circumstances.

35.    OHSU fired Plaintiffs despite some Plaintiffs working remotely, having natural immunity, and sending follow-up e-mails expressing their desire to continue their employment without being forced to compromise on their beliefs, appealing to OHSU's dedication to inclusivity, and proposing accommodations to alleviate any of burden OHSU may incur in keeping them employed.

36.    Due to OHSU's termination of their employment and difficulty in obtaining comparable employment with another employer, Plaintiffs have suffered the following monetary damages:

a. APRIL JIMENEZ-MENDEZ was making approximately $25,000 per year at $22.00 per hour.

b. ARIANA JIMENEZ-MENDEZ was making approximately $40,000 per year at $23.77 per hour.

c.  KHIMICH was earning between $3,600 to $4,000 per month, depending on how many hours worked.  She lost her Public Employee Retirement System plan – including the six (6) percent matching contribution she received from OHSU – as well as life insurance benefits for herself, her spouse, and her dependents.  She is now earning about 25% less income without benefits.  She also had to pay funeral expenses for the baby she lost when OHSU mandated that she come in at a time when it was physically risky – to herself and her baby – for her to do so.

d.  CARVALHO was making about $45,000 per year.  She was forced to take out all $15,000 ($11,000 after taxes) in her 401k retirement to make ends meet, and lost her medical insurance.

e.  CERNAVA has lost wages in the neighborhood of $5,400 per month, or $68,400 annually.  After OHSU fired her, she earned $900 from a temporary job working for her brother and another $684 in unemployment benefits for finding a job with another employer.  CERNAVA is earning $2.26 per hour less in her current job than she was at OHSU.

f.  PARKHOTYUK lost wages in the amount of approximately $4,800 per month.  She also lost $900 per month in health insurance benefits and stopped receiving payments to her 401(k) retirement account.

37.    Due to OHSU's termination of their employment, Plaintiffs have also suffered noneconomic damages in the form of anxiety, depression, and/or emotional distress – all of which manifested itself in various ways, including but not limited to insomnia, nightmares, weight loss or gain, high blood pressure,

fatigue, panic attacks, headaches, migraines, nausea, and vomiting.  Part and parcel of these symptoms are the strain on familial, romantic, or other relationships due to financial stress caused by Plaintiffs' loss of employment.

38.     As a condition of filing the herein lawsuit, Plaintiffs each obtained right-to-sue letters from the Equal Employment Opportunity Commission.  Those letters are attached hereto as **Exhibit "E."**

39.     Attached hereto as **Exhibit "F"** are printouts from the website TimeandDate.com showing when the 90-day statute of limitations set forth in each right-to-sue letter is set to expire.  Plaintiffs have attached these printouts hereto as proof that they have timely filed this lawsuit.

## FIRST CAUSE OF ACTION:
### Violation of Title VII – Failure to Accommodate
### [42 U.S.C. § 2000e-2]
### Against Defendant OHSU

40.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

41.     Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

42.     For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

43.     Defendant OHSU is, and at all times relevant herein was, an employer as defined by Title VII.

44.     The term "religion," for Title VII's purposes, "includes **_all_** aspects of religious observance and practice, **_as well as belief_**[.]"  42 U.S.C. § 2000e(j) (emphasis added).

45.    As religious practitioners, Plaintiffs belong to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

46.    Plaintiffs hold sincere religious beliefs that due to COVID-19 vaccine manufacturers' use of cells from aborted babies in the testing, development, and production of the vaccines, receiving the vaccination would make them complicit in something they, because of their sincerely held religious beliefs, deem impermissible.

47.    Plaintiffs' bona fide religious beliefs conflicted with their employment-related duty to receive a COVID-19 vaccine.  *See* Exs. "C"-"K."

48.    Plaintiffs informed their employer, Defendant OHSU, of the conflict between their religious beliefs and employment-related duties.  *See* Exs. "C"-"K."

49.    Defendant OHSU subjected Plaintiffs to discriminatory treatment by (1) declaring their beliefs unworthy of a religious exception, (2) placing them on unpaid leave on or about October 18, 2021, and (3) by firing them on or about December 2, 2021.  *See* Ex. "N."

50.    Defendant OHSU made no attempt to accommodate Plaintiffs' bona fide religious belief, as Title VII requires.

51.    Defendant OHSU never made any assertion to Plaintiffs that OHSU would incur undue hardship by accommodating Plaintiffs' beliefs.

52.    Defendant OHSU could, and should, have easily accommodated Plaintiffs' sincere religious beliefs by allowing Plaintiffs to continue working, whether remotely (in the cases of APRIL JIMENEZ-MENDEZ and KHIMICH) or continuing effective mitigation strategies.  Because Plaintiffs had already been working remotely or with COVID-19 mitigation procedures for the duration of the pandemic, there was no reason whatsoever why OHSU could not have allowed them to do so for the foreseeable future, if not on a permanent basis.

53.     OHSU offered no such accommodations to Plaintiffs, opting to take adverse employment actions against them instead.

54.     Animus toward Plaintiffs' specific religious beliefs is truly what motivated Defendant OHSU to get rid of Plaintiffs, any assertion by OHSU to the contrary notwithstanding.

55.     Based on the foregoing, Defendant OHSU has unlawfully discriminated against Plaintiffs in violation of Title VII.

<div align="center">

**SECOND CAUSE OF ACTION:**
**Violation of Title VII – Religious Discrimination**
**[42 U.S.C. § 2000e-2]**
**Against Defendant OHSU**

</div>

56.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

57.      "To establish a prima facie case of religious discrimination, [Plaintiff] must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) '*either* that similarly situated individuals outside her protected class were treated differently, *or* other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" *Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022 (D. Or. 2008) (emphasis in the original) [quoting *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743-44 (9th Cir. 2004)].

58.     As religious practitioners of varying denominations, Plaintiffs belong to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

59.     Plaintiffs were qualified for their various positions with OHSU.

60.     Defendant OHSU subjected Plaintiffs to multiple adverse employment actions – first by threatening to place them on unpaid leave and/or terminate their employment if they did not receive a COVID-19 vaccine, then by

placing them on unpaid leave on or about October 18, 2021, and ultimately by firing them on December 2, 2021.  *See* Ex. "N."

61.     Defendant OHSU treated similarly situated individuals outside Plaintiffs' protected class differently: Implicit in OHSU's statement to employees that the VERC "expects that very few of the submitted requests for religious exemptions will be approved" is that **_some_** exceptions would be approved.  *See* Ex. "B" [OHSU's declaration that "(n)arrow exceptions process will help keep OHSU and the community safe"].  The fact that OHSU circulated a list of beliefs it deemed unacceptable – i.e., that were unworthy of accommodation – implies that only those individuals who held the right beliefs would receive accommodations.

62.     At the very least, the facts that (1) OHSU circulated a list of beliefs it deemed unacceptable – i.e., that were unworthy of accommodation – and (2) denied Plaintiffs religious exceptions because they had those beliefs are circumstances that give rise to an inference of religious discrimination.

63.     Based on the foregoing, Defendant OHSU has committed religious discrimination against Plaintiffs in violation of Title VII.

## THIRD CAUSE OF ACTION:
### Violation of Constitutionally Protected Freedom of Religion
### [U.S. Const. amend. I; 42 U.S.C. § 1983]
### Against DOES 1-50

64.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

65.     Under 42 U.S.C. § 1983, anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

66.    Under 42 U.S.C. § 1983, state actors like the VERC's members –
whose identities have yet to be ascertained – forfeit their qualified immunity from
liability when, acting in their official capacities, they deliberately infringe on
constitutional rights: "[A] state official who violates federal law '*is in that case
stripped of his official or representative character and is subjected in his person
to the consequences* of his individual conduct.'" *Scheuer v. Rhodes*, 416 U.S. 232,
237 (1974) (emphasis added).

67.    The Free Exercise Clause of the U.S. Constitution's First
Amendment, made applicable to states via the Fourteenth Amendment, prohibits
state governments from infringing on individuals' freedom of religion.  The
Fourteenth Amendment prohibits state governments from depriving any person of
liberty without due process of law.  U.S. Const. amend. XIV, § 1.

68.    "The Free Exercise Clause protects against government hostility that
is masked as well as overt." *Church of the Lukumi Babalu Aye v. City of Hialeah*,
508 U.S. 520, 534 (1993) (*Lukumi*).  Acting under color of state law, the VERC's
members – whose identities have yet to be ascertained – expressed overt hostility
toward the religious beliefs of certain OHSU employees, including and especially
Plaintiffs, by declaring which religious beliefs were worthy of religious exceptions
from Gov. Brown's Vaccine Mandate and which religious beliefs were not.

69.    Furthermore, "[w]hen the power, prestige and financial support of
government is placed behind" – or, for that matter, against – "a particular religious
belief, *the indirect coercive pressure upon religious (individuals) to conform to
the prevailing approved religion is plain*." *Sch. Dist. of Abington Twp. v.
Schempp*, 374 U.S. 203, 221 (1963) (*Schempp*) (emphasis added).  Acting under
color of state law, the VERC effectively declared that because multiple high-
profile religious organizations had expressed approval of COVID-19 vaccines

despite their connection to abortion, OHSU employees belonging to those organizations' faith essentially had no excuse for not receiving a COVID-19 vaccine. In so doing, the VERC's overstepped their constitutional bounds, pressuring Plaintiffs to conform to the prevailing approved religion.

70.    Acting under color of state law, the VERC's members effectively penalized Plaintiffs for adhering to their sincere, religiously-based objections to receiving a COVID-19 vaccine by threatening to fire, and then firing, Plaintiffs. The VERC's members forced Plaintiffs to choose between the government-provided benefit of continued employment with OHSU and following their religious beliefs. This, the U.S. Constitution prohibits.

71.    Even assuming Defendant OHSU had a compelling interest in halting the spread of COVID-19 to its employees and patients, the VERC's members could – and should – have reasonably accommodated Plaintiffs' beliefs and let them keep working. The VERC's actions in establishing and enforcing a discriminatory religious exception were not narrowly tailored and cannot survive strict scrutiny under the First Amendment.

72.    Based on the foregoing, VERC's members, identified herein as DOES 1-50, have deprived Plaintiffs of their constitutionally protected freedom of religion and should be held accountable accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

## ON ALL CAUSES OF ACTION:

1.    For declaratory and injunctive relief against the members of the VERC, as stated *supra*;

2.    For economic damages in an amount according to proof at trial;

3.    For non-economic damages in an amount according to proof at trial;

4.    For punitive damages in an amount according to proof at trial;

5.    For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

6.    For such other and further relief as the Court may deem proper.


Dated: August 15, 2023                    PACIFIC JUSTICE INSTITUTE

                                          __/s/ *RAY D. HACKE*_____
                                          Ray D. Hacke
                                          Attorneys for Plaintiffs
                                          APRIL JIMENEZ-MENDEZ *et al.*

# EXHIBIT "A"

Browse Stories

Awards and Accomplishments

Community

COVID-19

Education

Health Care

Labor Relations

Philanthropy

Research

Viewpoint

f Share    Tweet    in Share    ✉ Email    🖨 Print

# Abortion is essential health care

🕐 June 24, 2022    📍 Portland, Oregon



*Content warning: In support of trauma-informed communications, please be aware that this message contains topics that may be activating for some community members. The* Confidential Advocacy Program *can be reached 24/7 by calling 833-495-2277. Additional resources for OHSU members are available* here *.*

Every day at OHSU, thousands of dedicated researchers, clinicians, students and staff advance our focus of healing, teaching and discovery, to improve not just the lives of Oregonians, but of all those who interact with this institution. They do so with science as their guide and the belief that every individual should be able to make informed health care decisions for themselves, including whether or not to access abortion care.

History shows us that the impact of today's decision by the United States Supreme Court to roll back the protections of *Roe v. Wade* guarantees one thing: Abortion will become unsafe and less accessible for far too many people in this country. It should not be this way. We believe that access to health care of any kind, including abortion, should not be limited by location, resources, bias, prejudice or the absence of care.

Here at OHSU, we are resolute in our commitment to provide the full continuum of sexual and reproductive health care — including abortion — to all who seek it, and to educate the next generation of clinicians and advance groundbreaking research. As we face a post-*Roe* world, we acknowledge the increased responsibility we have, along with other providers in Oregon, to ensure people from out-of-state are able to access the critical care they need.

To the individuals who need this care, we stand with you. To the dedicated clinicians and advocates who work tirelessly to provide and advance abortion care, we stand with you. OHSU is committed to doing everything we can to support and advocate for you and for equitable access to comprehensive reproductive services for all people.

*OHSU is committed to ensuring a respectful, welcoming and inclusive place to learn, work and receive care for all people regardless of gender, race, religion and sexual orientation. Our position on this issue is based on our obligation to improve the health and well-being of Oregonians and beyond, not on politics. In taking a position on any issue, OHSU acknowledges that some within the community may disagree. We encourage respectful conversation and feedback so that we may all better understand one another. Only together can we fulfill our mission and stimulate the spirit of inquiry, initiative and cooperation among students, faculty and staff.*


Previous Story
OHSU statement on gun violence, public safety


Next Story
PUBLIC NOTICE: Northwest Commission on Colleges and Universities to conduct comprehensive evaluation of OHSU on Oct. 24-26, 2022

Media Contact

OHSU Communications

503 494-8231 ☎

Email OHSU ✉

Related


OHSU's position is steadfast: Abortion is health care

# EXHIBIT "B"

**Exhibit 3**

**ellie.chegarnov@outlook.com**

| | |
|---|---|
| **From:** | Connie Seeley <now@ohsu.edu> |
| **Sent:** | Thursday, September 30, 2021 6:13 PM |
| **To:** | Ellie Chegarnov |
| **Subject:** | Sept. 30 update |

OHSU**NOW**

*Contact Language Services if you need help translating.*
*ትርጉም የሚፈልጉ ከሆነ፣ Language Services (የቋንቋ አገልግሎትን) ያግኙ.*
*Molimo Vas da kontaktirate Language Services (Jezički Servis) ukoliko Vam je potrebna pomoć pri prevođenju.*
*Si necesita ayuda con traducción, comúniquese con Language Services (Servicios de Idiomas).*
*ติดต่อ Language Services (บริการด้านภาษา) หากท่านต้องการความช่วยเหลือในการแปลภาษา.*
*Liên lạc Language Services (các Dịch vụ Ngôn ngữ) nếu bạn cần sự trợ giúp thông dịch.*

*Lee el mensaje de ayer.*



Share your experiences with the **Covington Hotline**

# Today's highlights

- **All OHSU employees and students will need to be compliant with OHSU's vaccination policy by Oct. 18.** Today, we want to reiterate why this is so important and why we have narrow criteria for approving exception requests.
- **The more the merrier: Occupational Health can provide your COVID-19 booster.** No need to try OHSU pharmacies.
- **Automated Box content copy starts tomorrow, Oct. 1.** Do not access or use the From_Box folder in OneDrive until you are notified by ITG that the file migration is complete.
- **Are you experiencing compassion fatigue?** A powerful message from OHSU's Dr. George Keepers.
- **Only electronic badge requests accepted Oct. 4:** All requests must also be approved by a manager/OHSU sponsor.
- **Inbound FedEx shipments have been experiencing substantial delays due to national and worldwide labor shortages.** Please account for these delays when you place your orders.

# Narrow exceptions process will help keep OHSU and our community safe

As you know, all OHSU employees and students will need to be compliant with OHSU's vaccination policy by Oct. 18. Across OHSU's more than 22,000 members, some of you have requested an exception for religious or medical reasons.

On Sept. 22, OHSU shared its narrow criteria for approving exception requests, and some of you have asked – why is this so narrow? OHSU has a responsibility to our members, our patients and our community to keep everyone as safe as possible. Vaccination against COVID-19 is an important tool in creating this safe environment.

There are valid reasons that a person may not be able to get vaccinated, but OHSU, and many of our peers, are using narrow criteria so we can ensure that the lens applied is truly a medical or religious one. In preliminary reviews, **OHSU's exception review panel expects that very few of the submitted requests for religious exceptions will be approved**.

This is in part because social, political or economic philosophies or personal preferences are not considered to be religious beliefs, and will not qualify a member for a religious exception. Examples of beliefs that do **not** qualify for a religious exception include:

- Arguments for free will or against compulsion.
  - This does not refer to the vaccine, but instead your right to have a religious freedom or conscientiously object to the vaccine.
- Concerns over vaccine safety or content.
  - These are not religious arguments and often inconsistent with proven facts.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
  - These professed beliefs are personal moral choices and/or conscientious objections rather than a tenet of a religious faith.
  - No fetal tissue or cells are contained in any of the vaccines currently available under FDA approval or emergency use authorization in the U.S.
  - While they played no role in their development or production, HEK-293 cell lines created over 50 years ago were used in confirmatory testing of the current mRNA vaccines. Cells from the same line have commonly been used in biologic research since the late 70s. This cell line is used in the testing of many common medicines, including Tylenol, Advil, Aspirin, Claritin, Benadryl, Pepto-Bismol, Mucinex, Tums and Prilosec, among many others.
- A personal revelation from God about the vaccine, an objection to the vaccine based upon bodily integrity or sanctity, and/or a belief that the vaccine is "unclean."
  - These are personal moral choices and/or conscientious objection rather than a tenet of a religious faith.

The exception review panel is working through these requests now. However, each review is requiring a high level of individual assessment by multiple reviewers by representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness.

With the rigorous reviews, **it is unlikely that the committee will complete all the reviews by Saturday, Oct. 2**.

As you know, if you are not compliant with the policy by Oct. 18, you cannot work, study or volunteer at OHSU on Oct. 19. Monday, Oct. 4, is the last day that you could get a Johnson & Johnson vaccine in time to be fully vaccinated and compliant with the policy by Oct. 18.

If you believe your request may not be approved based on these criteria, we are here to help. You can still get vaccinated, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you. Remember to enter your vaccination record as soon as possible in Enterprise Health, as well. It may also be helpful to check that your Enterprise Health record is up-to-date, since OHSU is using that to determine compliance.

If you have questions about the vaccines, email AskOHSU@ohsu.edu, and we can connect you with someone who can answer your questions. You're also encouraged to join an open Q&A forum this Friday, Oct. 1, at 11 a.m.

# The more the merrier: Occupational Health can provide your COVID-19 booster

Occupational Health continues to have ample capacity for giving COVID-19 booster doses to employees and students. Read this OHSU Now post for all the details about making an appointment in Enterprise Health. If you only need the flu vaccine, you are still welcome to walk in on Wednesdays.

Please let our OHSU pharmacy colleagues focus on their work prioritizing patient care.

# Reminder: Box-to-OneDrive automated content copy starts tomorrow

Here's what you need to know:

- Your Box files and folders will be copied by ITG through a series of automated syncs. This process is **entirely automated** and will happen behind the scenes, allowing you to continue working in Box without interruption.
- Your files will begin to appear in a **From_Box folder in OneDrive** starting tomorrow and continuing through Dec. 31, 2021. Read the Sept. 23 OHSU Now post.
- Please **do not use the files in the From_Box folder** in OneDrive until you are notified by ITG that the migration is complete.

Keep working on your files in Box, take a File Management in the Cloud training and start exploring and learning OneDrive. Read the Box Migration FAQs to learn more.

# Are you experiencing compassion fatigue?

In a letter to the Department of Psychiatry on July 30, 2021, George Keepers, M.D., professor and chair of psychiatry, OHSU School of Medicine, wrote, "…There's another surge gaining strength by the day in the country, a surge of anger at the people who have refused to be vaccinated, who have denied the tragedy of this pandemic … ignored scientific experts, ignored the pleas of overworked, despairing health care professionals…."

As Dr. Keepers explains, this anger is symptomatic of compassion fatigue, which can be a normal consequence of working in a helping field. Health care providers and those in professions based on service are particularly vulnerable to compassion fatigue – a reality made precipitously worse by the pandemic.

# EXHIBIT  C

April Jimenez-Mendez



# OHSU Member COVID-19 Vaccine
# Religious Exemption Request Form

*OHSU Members requesting religious exemptions must personally complete Part A, B and C. All OHSU Members requesting an exemption must watch the required video on Occupational Health's webpage. Completed forms should be uploaded into* Enterprise Health.

## Part A: OHSU Member Name and Identifying Information

Name: Abril (April) Jimenez Mendez_____

Mailing Address: 22555 SW Highland Dr #179_____

City: Sherwood_____ State:_____ Oregon Zip Code: 97140_____

Preferred Pronoun(s):_____ Preferred Phone: 971-204-2375_____

Preferred Email: apriljmnz857@gmail.com_____ Preferred Method of Contact: Email

Employee/Student ID #: 99183_____ Job Title: PASR_____

Manager/Supervisor:_____Angela Wright_____

Department: _____Knight Cardiovascular Institute _____

## Part B:   Religious Exemption Request

Name of Religion:
_____Christian_____

__X__   Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious observances, practices or beliefs and how it affects your ability to receive a COVID-19 vaccination

The scriptures reveal that God knows us even before we are conceived. Jeremiah 1:4-5 "Then the word of the Lord came unto me, saying Before I formed thee in the belly I knew thee; and before thou calmest forth out of the womb I sanctified thee, and I ordained thee a prophet unto the nations." And God's creative powers are effectively at work while we are yet in the womb. Psalms 139:13-16 "For thou hast possessed my reins: thou hast covered me in my mothers womb. I will praise thee; for I am fearfully and wonderfully made: marvelous are thy works; and that my soul knoweth right well. My substance was not hid from thee, when I was made in secret, curiously wrought in the lowest parts of the earth. Thine eyes did see my substance, yet being unperfect; and in thy book all my members were written, which in continuance were fashioned, when as yet there was none of them." The Christian church has condemned abortion - the killing of human infants while in the womb from earliest times. The Didache, a conduct code of the early Christian community, dated by some as early as 70 AD, is in accord with Scripture, stating, "Do not abort a foetus or kill a child that is born." Loeb Edition of the Apostolic Fathers (also translated as "Thou shalt not murder a child by abortion nor kill that which is begotten.") A Plea For Christians, written around AD 177 by Athenagoras, stated, "We say that those women who use drugs to bring on abortion commit murder, and will give an account to God for the abortion." Tertullian, in his Apologeticum, written in 197 AD, wrote: "Murder being once for all forbidden, we (Christians) may not destroy even the fetus in the womb,..."



# OHSU Member COVID-19 Vaccine
# Religious Exemption Request Form

Is there any other information regarding your beliefs, observances, or practices that would help us evaluate your request?   (for example, have you previously declined medical care because of your religious beliefs?)

My religious belief that requiring a vaccine that uses aborted fetal cells lines in the development or testing of the vaccine violates my sincere held religious beliefs regarding the sanctity and protection of pre-born children.

A recognized professional, (i.e. religious affiliate), who is familiar with your needs and can substantiate your request, may need to be contacted. Please provide the following information regarding the religious affiliate:

Name of Professional:  Stuart Mason

Title: Senior Pastor

Represented Organization: Timberline Baptist Church

Street Address:            24645 SW Old Highway 99 West

City:    Sherwood            State:    Oregon            Zip Code: 97140

Telephone:            503-625-9956            Email: smason@timberlinebaptist.net

How long have you had a relationship with the recognized religious professional?:

2 Years

**AUTHORIZATION:** I authorize Oregon Health & Science University (OHSU) to discuss my circumstances, religious practices, observances and beliefs with the professional religious affiliate named above, and I authorize that religious affiliate to discuss my need for reasonable accommodation with OHSU.

_____
Signature

## Part C:  OHSU Member Attestation

It is OHSU's position that COVID-19 is a highly contagious respiratory virus that affects people of all ages. This virus can cause long-term medical problems and death regardless of age. This virus spreads through respiratory secretions related to speaking, singing, yelling, coughing, and sneezing. Infected individuals can spread the virus to others. Up to 50% or more of people can be infected without realizing it. The COVID-19 vaccines are not safe and are not highly effective at preventing death and hospitalization. When large numbers within a population are immunized, viral spread will be significantly



# OHSU Member COVID-19 Vaccine
# Religious Exemption Request Form

limited and the development of viral variants can be slowed. Each individual of a community can contribute to this protective approach.

**By signing this form, I acknowledge and affirm that:**

- I am requesting a religious exemption from receiving the COVID-19 vaccination.
- OHSU recommends individuals receive COVID-19 vaccination to protect themselves, their families and people they work or live with.
- I understand OHSU's position is that if I am not vaccinated, I may become sick with COVID-19 and may not put others at risk of serious illness, disability or death.
- If I am a student, I understand not being vaccinated against COVID-19 may impact my ability to participate in external rotations that require vaccination and this may impact my academic progression.
- I have received information about how the vaccine helps protect against COVID-19.
- I have reviewed the materials available on https://www.ohsu.edu/health/unsure-about-covid-vaccines-information-consider-and-how-learn-more and watched the required video on vaccination.
- If I want to, I have been able to ask questions and have my questions answered.
- It is my decision to decline vaccination at this time due to my sincere held religious beliefs, even though I have received information about why it is important and the risk of not getting vaccinated. I understand that I may change my mind in the future and receive a vaccination.

By signing this form, I declare and acknowledge that I have read and understand the information on this form. I am requesting a religious exemption from the COVID-19 vaccine.

**Signature of OHSU Member**: _____ **Date**: __9/14/2021_____

Upload this completed form to Enterprise Health at https://webchartnow.com/ohsu/webchart.cgi.

Ariana Jimenez-Mendez



# OHSU Member COVID-19 Vaccine
# Religious Exemption Request Form

*OHSU Members requesting religious exemptions must personally complete Part A, B and C. All OHSU Members requesting an exemption must watch the required video on Occupational Health's webpage. Completed forms should be uploaded into Enterprise Health.*

## Part A: OHSU Member Name and Identifying Information

Name: Ariana Jimenez Mendez

Mailing Address: 22555 SW Highland Dr #179

City: Sherwood _____ State:  Oregon        Zip Code: 97140

Preferred Pronoun(s):_____    Preferred Phone: 503-515-4580

Preferred Email: Ariana_jmnz@live.com                Preferred Method of Contact: Email

Employee/Student ID #: 76767_____ Job Title: PAS Lead

Manager/Supervisor:_____ Brian Stief

Department: _____School of Dentistry _____

## Part B:   Religious Exemption Request

Name of Religion:
_____Christian_____

__X__   Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious observances, practices or beliefs and how it affects your ability to receive a COVID-19 vaccination

The scriptures reveal that God knows us even before we are conceived. Jeremiah 1:4-5 "Then the word of the Lord came unto me, saying Before I formed thee in the belly I knew thee; and before thou calmest forth out of the womb I sanctified thee, and I ordained thee a prophet unto the nations." And God's creative powers are effectively at work while we are yet in the womb. Psalms 139:13-16 "For thou hast possessed my reins: thou hast covered me in my mothers womb. I will praise thee; for I am fearfully and wonderfully made: marvelous are thy works; and that my soul knoweth right well. My substance was not hid from thee, when I was made in secret, curiously wrought in the lowest parts of the earth. Thine eyes did see my substance, yet being unperfect; and in thy book all my members were written, which in continuance were fashioned, when as yet there was none of them." The Christian church has condemned abortion - the killing of human infants while in the womb from earliest times. The Didache, a conduct code of the early Christian community, dated by some as early as 70 AD, is in accord with Scripture, stating, "Do not abort a foetus or kill a child that is born." Loeb Edition of the Apostolic Fathers (also translated as "Thou shalt not murder a child by abortion nor kill that which is begotten.") A Plea For Christians, written around AD 177 by Athenagoras, stated, "We say that those women who use drugs to bring on abortion commit murder, and will give an account to God for the abortion." Tertullian, in his Apologeticum, written in 197 AD, wrote: "Murder being once for all forbidden, we (Christians) may not destroy even the fetus in the womb,..."



# OHSU Member COVID-19 Vaccine
# Religious Exemption Request Form

Is there any other information regarding your beliefs, observances, or practices that would help us evaluate your request?   (for example, have you previously declined medical care because of your religious beliefs?)

My religious belief that requiring a vaccine that uses aborted fetal cells lines in the development or testing of the vaccine violates my sincere held religious beliefs regarding the sanctity and protection of pre-born children.

A recognized professional, (i.e. religious affiliate), who is familiar with your needs and can substantiate your request, may need to be contacted. Please provide the following information regarding the religious affiliate:

Name of Professional:  Stuart Mason

Title: Senior Pastor

Represented Organization: Timberline Baptist Church

Street Address:          24645 SW Old Highway 99 West

City:    Sherwood          State:   Oregon          Zip Code: 97140

Telephone:          503-625-9956          Email: smason@timberlinebaptist.net

How long have you had a relationship with the recognized religious professional?:

2 Years

**AUTHORIZATION:** I authorize Oregon Health & Science University (OHSU) to discuss my circumstances, religious practices, observances and beliefs with the professional religious affiliate named above, and I authorize that religious affiliate to discuss my need for reasonable accommodation with OHSU.

_____
Signature

## Part C:  OHSU Member Attestation

It is OHSU's position that COVID-19 is a highly contagious respiratory virus that affects people of all ages. This virus can cause long-term medical problems and death regardless of age. This virus spreads through respiratory secretions related to speaking, singing, yelling, coughing, and sneezing. Infected individuals can spread the virus to others. Up to 50% or more of people can be infected without realizing it. The COVID-19 vaccines are not safe and are not highly effective at preventing death and hospitalization. When large numbers within a population are immunized, viral spread will be significantly



# OHSU Member COVID-19 Vaccine
## Religious Exemption Request Form

limited and the development of viral variants can be slowed. Each individual of a community can contribute to this protective approach.

**By signing this form, I acknowledge and affirm that:**

- I am requesting a religious exemption from receiving the COVID-19 vaccination.
- OHSU recommends individuals receive COVID-19 vaccination to protect themselves, their families and people they work or live with.
- I understand OHSU's position is that if I am not vaccinated, I may become sick with COVID-19 and may not put others at risk of serious illness, disability or death.
- If I am a student, I understand not being vaccinated against COVID-19 may impact my ability to participate in external rotations that require vaccination and this may impact my academic progression.
- I have received information about how the vaccine helps protect against COVID-19.
- I have reviewed the materials available on https://www.ohsu.edu/health/unsure-about-covid-vaccines-information-consider-and-how-learn-more and watched the required video on vaccination.
- If I want to, I have been able to ask questions and have my questions answered.
- It is my decision to decline vaccination at this time due to my sincere held religious beliefs, even though I have received information about why it is important and the risk of not getting vaccinated. I understand that I may change my mind in the future and receive a vaccination.

By signing this form, I declare and acknowledge that I have read and understand the information on this form. I am requesting a religious exemption from the COVID-19 vaccine.

**Signature of OHSU Member**: _____ **Date**: __9/18/2021_____

Upload this completed form to Enterprise Health at https://webchartnow.com/ohsu/webchart.cgi.

Dinah Cernava

*OHSU Members requesting religious exceptions must personally complete Part A, B and C. All OHSU Members requesting an exception must watch the required video on Occupational Health's webpage. Completed forms should be uploaded into Enterprise Health.*

## Part A: OHSU Member Name and Identifying Information

Name:  Dinah Cernava

Mailing Address: 3848 SW Marigold Street_____

City: Portland  State:OR Zip Code: 97219_____

Preferred Pronoun(s):___Female___    Preferred Phone:503-432-0755

Preferred Email: dinahcernava@hotmail.com  Preferred Method of Contact: Email

Employee/Student ID #: 54442 Job Title: HUC___

Manager/Supervisor:Brittney Caldera_____

Department: 5A/5C

## Part B:   Religious Exception Request

Name of Religion: Christian

_____    Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious observances, practices or beliefs and how it affects your ability to receive a COVID-19 vaccination

My relationship with Jesus effects every area of my life. 1 corinthians 6:19 states my body is the temple of the Holy Spirit who lives in me who I have from God. That means I can only put things in my body that are consistent with what God leads. I believe that it is against God's will for me to get this vaccine at this time and goes against my conscience to do so. Additionally, I believe that using an aborted baby's body in medical development is wrong and violates what God tells us to do. I am aware that two of the vaccines do not have direct cell lines from aborted fetuses in them but cell lines from aborted fetuses were used in their development. I am morally opposed to how these were made.

Is there any other information regarding your beliefs, observances, or practices that would help us evaluate your request?   (for example, have you previously declined medical care because of your religious beliefs?)

I submit all my decisions to God. And I treat my body as a temple of the Holy Spirit. For example, I do not use recreational drugs in my body or drink in excess, consistent with Ephesians 5:8.  I exercise and take care of myself. I had covid 19 this last month and have natural immunity at this time. I prayed for healing and used natural methods taking care of my body through exercise, vitamins and foods prior and during the infection.

A recognized professional, (i.e. religious affiliate), who is familiar with your needs and can substantiate your request, may need to be contacted. Please provide the following information regarding the religious affiliate:

Name of Professional: Carl Nine

Title: Pastor

Represented Organization: Rivers of Life Church

Street Address: 362 NE 219TH AVE

City: Portland   State:   Oregon                          Zip Code: 97030

Telephone: 503-816-6382                Email: None


How long have you had a relationship with the recognized religious professional?:
15 years
_____


**AUTHORIZATION:** I authorize Oregon Health & Science University (OHSU) to discuss my circumstances, religious practices, observances and beliefs with the professional religious affiliate named above, and I authorize that religious affiliate to discuss my need for reasonable accommodation with OHSU.


_____
Signature


## Part C:  OHSU Member Attestation

It is OHSU's position that COVID-19 is a highly contagious respiratory virus that affects people of all ages. This virus can cause long-term medical problems and death regardless of age. This virus spreads through respiratory secretions related to speaking, singing, yelling, coughing, and sneezing. Infected individuals can spread the virus to others. Up to 50% or more of people can be infected without realizing it. The COVID-19 vaccines are very safe and highly effective at preventing death and hospitalization. When large numbers within a population are immunized, viral spread will be significantly limited and the development of viral variants can be slowed . Each individual of a community can contribute to this protective approach.

**By signing this form, I acknowledge and affirm that:**

- •      I am requesting a religious exception from receiving the COVID-19 vaccination.
- •      OHSU recommends individuals receive COVID-19 vaccination to protect themselves, their families and people they work or live with.
- •      I understand OHSU's position is that if I am not vaccinated, I may become sick with COVID-19 and may put others at risk of serious illness, disability or death.

- • If I am a student, I understand not being vaccinated against COVID-19 may impact my ability to participate in external rotations that require vaccination and this may impact my academic progression.
- • I have received information about how the vaccine helps protect against COVID-19.
- • I have reviewed the materials available on https://www.ohsu.edu/health/unsure-about-covid-vaccines-information-consider-and-how-learn-more and watched the required video on vaccination.
- • If I want to, I have been able to ask questions and have my questions answered.
- • It is my decision to decline vaccination at this time, even though I have received information about why it is important and the risk of not getting vaccinated. I understand that I may change my mind in the future and receive a vaccination.

By signing this form, I declare and acknowledge that I have read and understand the information on this form. Notwithstanding, I am requesting a religious exception from the COVID-19 vaccine.

**Signature of OHSU Member**: _____ **Date**: _____

Upload this completed form to Enterprise Health at https://webchartnow.com/ohsu/webchart.cgi.

Inna  Khimich


OHSU

# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

*OHSU Members requesting religious exceptions must personally complete Part A, B and C. All OHSU Members requesting an exception must watch the required video on Occupational Health's webpage. Completed forms should be uploaded into Enterprise Health.*

## Part A: OHSU Member Name and Identifying Information

Name: *Anna Khimich.*

Mailing Address: *P.O. Box 66232*

City: *Portland*                   State: *OR*        Zip Code: *97290*

Preferred Pronoun(s): _____        Preferred Phone: *(971) 404-6072*

Preferred Email: *Khimichi@ohsu.edu*          Preferred Method of Contact: *email.*

Employee/Student ID #: *58471*     Job Title: *Medical Assistant*

Manager/Supervisor: *Kristen Lund*

Department: *PMC Clinic*

## Part B:  Religious Exception Request

Name of Religion: *Christian*

_____  Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

*See attached form*

Please describe your religious observances, practices or beliefs and how it affects your ability to receive a COVID-19 vaccination

*See attached form*

Is there any other information regarding your beliefs, observances, or practices that would help us evaluate your request?   (for example, have you previously declined medical care because of your religious beliefs?)

*See attached form*

A recognized professional, (i.e. religious affiliate), who is familiar with your needs and can substantiate your request, may need to be contacted. Please provide the following information regarding the religious affiliate:



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

Name of Professional: *Lew Wootan*

Title: *Pastor*

Represented Organization: *The River Church.*

Street Address: *4675 Portland Rd. NE, # 190*

City: *Salem*   State: *OR*   Zip Code: *97305*

Telephone: *(503) 385 - 8721*   Email: *TheRiverKeizer@gmail.com*

How long have you had a relationship with the recognized religious professional?:

*about a year*

**AUTHORIZATION:** I authorize Oregon Health & Science University (OHSU) to discuss my circumstances, religious practices, observances and beliefs with the professional religious affiliate named above, and I authorize that religious affiliate to discuss my need for reasonable accommodation with OHSU.

*clnna Khimich*
Signature

## Part C: OHSU Member Attestation

It is OHSU's position that COVID-19 is a highly contagious respiratory virus that affects people of all ages. This virus can cause long-term medical problems and death regardless of age. This virus spreads through respiratory secretions related to speaking, singing, yelling, coughing, and sneezing. Infected individuals can spread the virus to others. Up to 50% or more of people can be infected without realizing it. The COVID-19 vaccines are very safe and highly effective at preventing death and hospitalization. When large numbers within a population are immunized, viral spread will be significantly limited and the development of viral variants can be slowed . Each individual of a community can contribute to this protective approach.

**By signing this form, I acknowledge and affirm that:**

- I am requesting a religious exception from receiving the COVID-19 vaccination.
- OHSU recommends individuals receive COVID-19 vaccination to protect themselves, their families and people they work or live with.
- I understand that COVID-19 has caused a pandemic that continues to sicken and kill many people.
- I understand if I am not vaccinated, I may become sick with COVID-19. This may put my family, coworkers, friends or people around me at risk of serious illness, disability or death.
- If I am a student, I understand not being vaccinated against COVID-19 may impact my ability to participate in external rotations that require vaccination and this may impact my academic progression.



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

- I have received information about how the vaccine helps protect against COVID-19.
- I have reviewed the materials available on https://www.ohsu.edu/health/unsure-about-covid-vaccines-information-consider-and-how-learn-more and watched the required video on vaccination.
- If I want to, I have been able to ask questions and have my questions answered.
- It is my decision to decline vaccination at this time, even though I have received information about why it is important and the risk of not getting vaccinated. I understand that I may change my mind in the future and receive a vaccination.

By signing this form, I declare and acknowledge that I have read and understand the information on this form. Notwithstanding, I am requesting a religious exception from the COVID-19 vaccine.

**Signature of OHSU Member** *annalchimich*    **Date:** *9/15/21*

Upload this completed form to Enterprise Health at https://webchartnow.com/ohsu/webchart.cgi.



THE RIVER CHURCH
CHURCH FOR CHANGE

# The River Church

4675 Portland Road NE, #190
Salem, OR 97305
TheRiverKeizer@gmail.com • www.TheRiverNW.com
(503) 385-8721

September 15, 2021

Oregon Health & Science University
3181 SW Sam Jackson Park Rd
Portland OR 97239

RE:     **Religious Exemption for Vaccination of Inna Khimich**

TO WHOM IT MAY CONCERN:

I am the Senior Pastor of The River Church, a Salem, Oregon based ministry. I know Inna Khimich personally and can in confidence attest to her regular and active participation in our ministry. Inna is an online affiliate, but also active in our other community-oriented outreach ministries.

Inna's faith establishes that abortion is the murder of human beings and murder is a sin. Her faith establishes a firmly held religious conviction specifically against any vaccinations derived from the research used to create Wistar Institute's RA/27/3 or Wistar's WI-38 and all other vaccinations derived from the research and/or use of aborted human tissue.

Additionally, our faith establishes a firmly held religious belief against all vaccination stemming from the fact that the Bible teaches that all people are made in the image of God and refusal to receive a vaccination is supported by this scripture: "Know ye not that ye are the temple of God, and that the Spirit of God dwelleth in you? If any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are. ... What? Know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own?" 1 Corinthians 3:16-17, 6:19 (KJV). Our faith maintains the firmly held religious belief that our bodies are the temple of the Holy Spirit. It is a God-given responsibility and requirement for us to protect the physical integrity of our body against unclean food and injections.

Because of Inna's firmly held religious conviction against taking vaccinations, she is exempt from taking any vaccination as it violates her right to freedom of conscience as guaranteed by the U.S. Constitution.



THE RIVER CHURCH
CHURCH FOR CHANGE

Oregon Health & Science University

RE:   **Religious Exemption for Vaccination of Inna Khimich**
September 15, 2021
Page Two

With the following information in mind, Inna Khimich would like to inform you that she is exercising her legal right to legally assert her firmly held conviction of conscience against receiving any vaccinations. If you have any questions or wish to have further conversation on this matter, please feel free to contact me.

Sincerely,

Pastor Lew Wootan
*The River Church*
4675 Portland Rd. NE, #190
Salem, OR 97305

cc: Inna Khimich

Kseniya  Parkhotyuk

OFFICE OF THE DIRECTOR
Office of the State Public Health Director



# COVID-19 Vaccine Religious Exception Request Form

I am requesting an exception from the COVID-19 vaccination on the basis of a sincerely held religious belief.

| Individual's name:<br>Kseniya Parkhotyuk | Date of birth:<br>07/21/1985 |
|---|---|
| Phone number:<br>360-624-0019 | |
| Employer/Organization:<br>OHSU | Job Title/Position:<br>Senior Research Assistant |

## Please check the boxes below as appropriate and complete related questions:

☒ Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious belief and how it affects your ability to receive a COVID-19 vaccination

I, Kseniya Parkhotyuk, request a religious exemption and affirm the biblical principles below.

I am a member of the Love of God Church, a Christian, bible-believing church located in Vancouver, WA. I am a Christian who believes in the Bible, which include the teachings in the Old and New Testament. The scriptures reveal that "God knows us even before we are conceived" (Jeremiah 1:4-5); and "God's creative powers are effectively at work while we are yet in the womb" (Psalm 139:13-16). The Christian Church has condemned abortion- the killing of human infants while in the womb- from the earliest times. The Didache, a conduct code of the early Christian community is in accord with the Scripture, stating: "Do not abort a fetus or kill a child that is born". Fetal stem cell lines have been used in the development of the Johnson & Johnson COVID-19 vaccine. Also, fetal stem cell lines have been used in the testing of the Moderna and Pfizer COVID-19 vaccines, according to James Lawler, MD "You asked, we answered: Do the Covid-19 vaccines contain aborted fetal cells?, Nebraska Medicine, August 4, 2021. https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells.

Other sources:
http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/VaccineDevelopment_FetalCellLines.pdf

OHA 3871 (8/25/2021)

Thus, the Love of God Church, where I am a member, and I support the religious belief that receiving a vaccine that uses aborted fetal cell lines in the development and/or testing of the vaccine violates my sincerely held religious beliefs regarding the sanctity and protection of pre-born children.

In addition, "humans are made in the image and likeness of God" (Genesis 1:26). Christians have a duty to honor and care for the body God has given us as a temple of the Holy Spirit (Romans 12:1, 1 Corinthians 3:16, 6:20, 10:31). Therefore, to force or coerce a person to administer a substance into their body against their will is a violation of biblical beliefs.

Finally, in Romans 14:5, Paul encourages believers that, when we must make decisions of conscience "Each one should be fully convicted in his own mind". The reason for this is because it is a sin to go against one's conscience. "If you do anything you believe is not right, you are sinning." (verse 23) Each person will be held accountable by God for whether he or she listened to his or her God-given conscience.

Thus my faith prohibits me from being vaccinated with COVID-19 vaccine as proposed. US Constitution recognizes my right to object to consuming something- this vaccine- because it violates my faith. Therefore I respectfully assert my religious objection to this vaccination. I make this request for the Glory of God and consistent with my faith. Thank you for your consideration of it.

Respectfully,


I certify the above information to be true and accurate and that I sincerely hold the religious beliefs described above.

| Signature: | Date: |
|---|---|
| Kseniya Parkhotyuk | 8/30/21 |

Please note that if your exception request is approved, you may be required by your employer or other responsible party to take additional steps to protect you and others from contracting and spreading COVID-19. Workplaces are not required to provide this exception accommodation if doing so would pose a direct threat to the excepted individual or others in the workplace or would create an undue hardship.

**Document accessibility:** For individuals with disabilities or individuals who speak a language other than English, OHA can provide information in alternate formats such as translations, large print, or braille. Contact the Health Information Center at 1-971-673- 2411, 711 TTY or COVID19.LanguageAccess@dhsoha.state.or.us.

OHA 3871 (8/25/2021)



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

*OHSU Members requesting religious exceptions must personally complete Part A, B and C. All OHSU Members requesting an exception must watch the required video on Occupational Health's webpage. Completed forms should be uploaded into Enterprise Health.*

## Part A: OHSU Member Name and Identifying Information

Name: Kseniya Parkhotyuk

Mailing Address:21126 SE Highway 212

City: Damascus                          State:OR                Zip Code:97089

Preferred Pronoun(s):                          Preferred Phone:360-624-0019

Preferred Email: parkhotk@ohsu.edu                    Preferred Method of Contact: email

Employee/Student ID #:71278            Job Title: Senior Research Assistant

Manager/Supervisor: Cindy McEvoy

Department: Pediatrics

## Part B:   Religious Exception Request

Name of Religion: Christian


__x__   Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.


Please describe your religious observances, practices or beliefs and how it affects your ability to receive a COVID-19 vaccination

I, Kseniya Parkhotyuk, request a religious exemption and affirm the biblical principles below.

I am a member of the Love of God Church, a Christian, bible-believing church located in Vancouver, WA. I am a Christian who believes in the Bible, which include the teachings in the Old and New Testament. The scriptures reveal that "God knows us even before we are conceived" (Jeremiah 1:4-5); and "God's creative powers are effectively at work while we are yet in the womb" (Psalm 139:13-16). The Christian Church has condemned abortion- the killing of human infants while in the womb- from the earliest times. The Didache, a conduct code of the early Christian community is in accord with the Scripture, stating: "Do not abort a fetus or kill a child that is born". Fetal stem cell lines have been used in the development of the Johnson & Johnson COVID-19 vaccine. Also, fetal stem cell lines have been used in the testing of the Moderna and Pfizer COVID-19 vaccines, according to James Lawler, MD "You asked, we answered: Do the Covid-19 vaccines contain aborted fetal cells?, Nebraska Medicine, August 4, 2021. https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells.

Other sources:
http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/VaccineDevelopment_FetalCellLines.pdf



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

Thus, the Love of God Church, where I am a member, and I support the religious belief that receiving a vaccine that uses aborted fetal cell lines in the development and/or testing of the vaccine violates my sincerely held religious beliefs regarding the sanctity and protection of pre-born children.

In addition, "humans are made in the image and likeness of God" (Genesis 1:26). Christians have a duty to honor and care for the body God has given us as a temple of the Holy Spirit (Romans 12:1, 1 Corinthians 3:16, 6:20, 10:31). Therefore, to force or coerce a person to administer a substance into their body against their will is a violation of biblical beliefs.

Finally, in Romans 14:5, Paul encourages believers that, when we must make decisions of conscience "Each one should be fully convicted in his own mind". The reason for this is because it is a sin to go against one's conscience. "If you do anything you believe is not right, you are sinning." (verse 23) Each person will be held accountable by God for whether he or she listened to his or her God-given conscience.

Thus my faith prohibits me from being vaccinated with COVID-19 vaccine as proposed. US Constitution recognizes my right to object to consuming something- this vaccine- because it violates my faith. Therefore I respectfully assert my religious objection to this vaccination. I make this request for the Glory of God and consistent with my faith. Thank you for your consideration of it.

Respectfully,


Is there any other information regarding your beliefs, observances, or practices that would help us evaluate your request?   (for example, have you previously declined medical care because of your religious beliefs?)

n/a

A recognized professional, (i.e. religious affiliate), who is familiar with your needs and can substantiate your request, may need to be contacted. Please provide the following information regarding the religious affiliate:

Name of Professional: Vasily/Yelena Tishchenko

Title: Pastor

Represented Organization: Love of God Church

Street Address: 6407 NE 105th Ave

City: Vancouver                State:   WA                Zip Code: 98662

Telephone: 360-635-1174                Email: loveofgodim@gmail.com


How long have you had a relationship with the recognized religious professional?:

_____approximately 15 years_____



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

**AUTHORIZATION:** I authorize Oregon Health & Science University (OHSU) to discuss my circumstances, religious practices, observances and beliefs with the professional religious affiliate named above, and I authorize that religious affiliate to discuss my need for reasonable accommodation with OHSU.

Kseniya Parkhotyuk
Signature

## Part C:  OHSU Member Attestation

It is OHSU's position that COVID-19 is a highly contagious respiratory virus that affects people of all ages. This virus can cause long-term medical problems and death regardless of age. This virus spreads through respiratory secretions related to speaking, singing, yelling, coughing, and sneezing. Infected individuals can spread the virus to others. Up to 50% or more of people can be infected without realizing it. The COVID-19 vaccines are very safe and highly effective at preventing death and hospitalization. When large numbers within a population are immunized, viral spread will be significantly limited and the development of viral variants can be slowed . Each individual of a community can contribute to this protective approach.

**By signing this form, I acknowledge and affirm that:**

- I am requesting a religious exception from receiving the COVID-19 vaccination.
- OHSU recommends individuals receive COVID-19 vaccination to protect themselves, their families and people they work or live with.
- I understand that COVID-19 has caused a pandemic that continues to sicken and kill many people.
- I understand if I am not vaccinated, I may become sick with COVID-19. This may put my family, coworkers, friends or people around me at risk of serious illness, disability or death.
- If I am a student, I understand not being vaccinated against COVID-19 may impact my ability to participate in external rotations that require vaccination and this may impact my academic progression.
- I have received information about how the vaccine helps protect against COVID-19.
- I have reviewed the materials available on https://www.ohsu.edu/health/unsure-about-covid-vaccines-information-consider-and-how-learn-more and watched the required video on vaccination.
- If I want to, I have been able to ask questions and have my questions answered.
- It is my decision to decline vaccination at this time, even though I have received information about why it is important and the risk of not getting vaccinated. I understand that I may change my mind in the future and receive a vaccination.

By signing this form, I declare and acknowledge that I have read and understand the information on this form. Notwithstanding, I am requesting a religious exception from the COVID-19 vaccine.

**Signature of OHSU Member**: _Kseniya Parkhotyuk___ **Date:** __9/3/21_

Upload this completed form to Enterprise Health at https://webchartnow.com/ohsu/webchart.cgi.

Lisa  Carvalho

# Religious Exemption

The bearer of this card is EXEMPT from medical interventions that go against their sincere religious/spiritual beliefs and ethics. This includes wearing face coverings or being subjected to testing, vaccination, and/or isolation. The bearer reserves the right to voluntarily participate in such medical interventions if their conscience agrees with such actions. Your recognition and protection of these religious and civil rights are appreciated. Discrimination based on these sincere beliefs or violation of these rights may place you at risk of being prosecuted to the fullest extent of the law.

*Lisa Carvalho*
_____
Member Name

New Earth Ascending
www.newearthascending.org



New Earth Ascending Global Ministries
258 A St. Ste 1-131
Ashland, OR 97520
www.newearthascending.org
love@newearthascending.org

August 14, 2021

To Whom It May Concern,

Thank you for taking the time to review this statement of religious exemption. We are grateful for the opportunity to share our sincere spiritual beliefs and ethical practices in hopes of bringing a deeper sense of community and collective healing through these challenging times.

We are writing this letter on behalf of the members of New Earth Ascending (NEA), a registered 508 (c)(1)(a)(Religious Non-profit/Church) with a global ministry. This letter explains how the New Earth Ascending's teachings may lead our members to decline certain medical interventions. This letter includes official doctrine from the New Earth Ascending basic text, The Illumination Codex, and excerpts from official church bulletins (Letters to the Family of Light) regarding our sincere spiritual principles and codes regarding spiritual ethics, health, and wellness.

**Divine Source**
We recognize the Law of Oneness and the one Source of Creation(God). We see humanity as being in a state of spiritual amnesia where humanity has forgotten its Divine Nature. From this understanding, we believe that illness, disease, corruption, and fear are a symptom of that forgetting. We call the process of remembering our divine nature Ascension. Awakening to and aligning with our True Nature is essential to achieving perfect physical, mental, and spiritual health.

**Higher Evolution**
We recognize all of Creation evolves according to Divine Will and a Divine Plan for Creation with its own Divine and Universal Laws. It is our moral duty to align with Divine Law and act as stewards of this Divine Plan to bring this Earth into balance and harmony through compassion, higher truth, and divinely inspired wisdom. We see ourselves as missionaries of the Divine here to assist in the healing of Earth and humanity. As we align with our higher purpose and true nature, we live happier and healthier lives. We train our intentions, actions, and thoughts towards acts of selfless service and acts of devotion as extensions of the Higher Evolution.

**Conscience**
We believe that each individual has a direct connection to Source/God and that no other authority supersedes that connection. This connection is felt through our heart-centered conscience which guides us on our unique path of Life. As spiritual aspirants, seekers of divine union, we are morally required to follow our conscience and spiritual guidance.

**Life Eternal**
We acknowledge that we are of the nature of physical life and physical death but our Soul lives on for eternity! Whether a member believes in one single incarnation or reincarnation, we recognize the eternal evolution of Life and that we transition out of this life per the Higher Divine Plan. We believe that when our Soul has aligned with exiting this world, there is no protocol or medical intervention that will interrupt this divine orchestration.

**Faith**
We surrender our fears and place our health and wellbeing in the Higher Will of the Divine Source and strive to live a life of nobility and service to the awakening of humanity and the liberation of all beings from cycles of suffering.

We trust that all is happening for a reason to support our spiritual growth. We face challenges with faith and clarity in knowing that we are eternally supported by Source/God and nothing comes on our path that is not meant for our growth.

## Sovereign

We recognize the individual's right to be self-governed, self-regulated, and free from any external authority that cancels, manipulates, or violates free will. We believe that a person may refuse medical intervention if his/her/their informed conscience comes to this clear judgment regardless of mandates from external authorities.

## Free Will

We recognize the individual's Divine Creatorship and the right to choose what is good and best for them, having full agency over all areas of one's life.

## Non-violence/Non-harming

We are an interfaith ministry and our members come from various ethnic, cultural, and religious backgrounds. We unify with the shared core tenet of non-harming and non-violence and strive to live our lives in a way that benefits all of Life. Medical treatment protocols should be tested as safe and sourced ethically and sustainably. When there is potential for harm, full transparency of harm potential must be delivered to and understood by the recipient of the treatment protocol before they can make a sound and sure conscientious choice.

In following the principle of non-harming, we have a moral duty to be certain that when utilizing medical protocols and treatments that the research, development, testing, and production of medical treatments and protocols do not harm humans or animals. This is especially true with inoculations/vaccinations that use human or animal aborted fetal cell lines in their testing and production. Non-violence also extends into the right to deny invasive medical intervention such as having objects inserted into the body (i.e. nasal swab testing) or restrictive mandates such as unreasonable mask mandates or unreasonable social distancing measures. In such cases, we encourage our members to take appropriate reasonable precautions to limit transmission in the absence of immunization (i.e. saliva tests, reasonable social distancing).

## Therapeutic Proportionality

We acknowledge therapeutic proportionality which assesses whether or not the benefits of a medical intervention outweigh the negative, undesirable effects of taking such an intervention. This includes taking into account how this may affect them spiritually, mentally, physically, socially, or otherwise. The judgment of this decision must be made by the potential recipient with informed medical consent through their conscience and should not be made by any external authority such as health authorities, institutions, or otherwise.

## Light Body Ascension

We believe that humanity and planet Earth are going through a rapid physical and spiritual transformation, called by many as The Ascension to New Earth. We believe this process to be part of a higher evolutionary divine plan guided by the Source of Creation. We believe this transformation is happening through our genetics and consciousness. This process is beyond the standard biological evolution spoken of by modern science.

## Homeostasis

We believe the natural state of our body, mind, and spirit is wellness and harmony and that we can heal ourselves within the limitations of Divine Will and the Divine Plan. We see illness as a teacher pointing us to where we need to reconcile our consciousness or fortify our subtle energies or physical body.

## Faith-Based Healing

We believe in the healing and transformative power of prayer, meditation, and the laying of hands. We believe these practices directly connect us to the source of healing, vitality, and wellness for instantaneous multidimensional healing made possible through each individual's innate connection to God/Source.

## Holistic

We follow holistic lifestyle models and prefer methods of healing, medicine, and wellness that work at the root cause of illness and support the body's natural ability to heal itself. All levels and layers of one's beings are

addressed including physical, etheric, mental, intellectual, and spiritual. A core intention of NEA is the raising of personal and planetary vibrational frequency to shift ourselves and our planet into a higher frequency bandwidth that is beyond the frequency of illness and disease. We are particularly excited about advancements in quantum healing technologies and vibrational medicine practices that work at the cellular and subtle energy levels to encourage the body's ability to heal itself and to further activate higher states of consciousness.

**Natural and Organic**
We believe natural, organic, and chemical-free foods are essential to our health. We choose to take medicines of the Earth that work harmonically with our body's chemistry. We encourage our members to use daily health supplements and to practice fasting and detoxification to purify their physical body systems, reconcile vital life processes, and clear their emotional/mental bodies. Members are also encouraged to have a physical movement "practice" such as yoga, nature immersions, and dance to balance, reset, and restore their body, mind, and spirit.

**Divine DNA**
We believe human DNA is divinely designed and curated and that we must protect our genetic integrity. We do not give consent for alteration, manipulation of our DNA or mRNA as we believe this interferes with the Light Body Ascension process.  Currently, New Earth Ascending does not recommend the mRNA inoculations for our members as our spiritual guidance says that these gene therapies have a negative impact on the Light Body Ascension process. Some members may receive their own internal, spiritual guidance to take these inoculations but it is not generally advised and should only be followed by those rare individuals after deep meditation and contemplation.

**Free Choice**
When holistic, natural, and organic methods have failed to reconcile issues of health, or in case of emergency or personal choice, each individual reserves the right to try other methods of medicine after careful consideration, prayer, and meditation on the root cause of ill health. There is no judgment of this as everyone is guided to do what is best and good for their health and path.

**Fellowship**
We recognize the power and potency of worship and gathering with other people of faith to strengthen the health and wellness of our communities and the world. We exercise our religious rights to gather as people of faith as we see fellowship and prayer as crucial components for the maintenance of health and wellness for us as individuals, as a faith community, and for the health and wellness of the entire Earth. We see dancing, music, singing, and other forms of devotion as essential to our health, particularly when done together as this amplifies our heart-centered intentions and prayers.

We advise all our members to educate themselves in terms of local, state/provincial, national, and international laws regarding medical ethics and human rights such as The Nuremberg Code, the World Health Association's Declaration of Helsinki, and other bioethics principles and laws and to share that information with those who are responsible for approving religious exemption.

Thank you for taking the time to review this information and understand our beliefs. We sincerely hope that people of faith, from any religious,  spiritual, or philosophical background, will not be treated differently or discriminated against because of our sincere beliefs and practices. We hope that upon acknowledging our exemption from medical intervention, we are not segregated because of our faith and philosophical differences. Members of New Earth Ascending have many tools and resources to share to assist global healing and we are happy to share from our hearts!

Sincerely,

Michael Garber & Ron Amit
Co-Founding Ministers of New Earth Ascending



New Earth Ascending
Global Ministries
258 A St. Ste 1-131
Ashland, OR 97520

Co-Founding Ministers
Michael Garber & Ron Amit

# NEA Wellness Principles:

Divine Source ⋆ Eternal Life ⋆ Ascension
Higher Evolution ⋆ Divine Genetics
Faith ⋆ Therapeutic Proportionality
Free-will ⋆ Conscience ⋆ Sovereignty
Non-violence/Non-harming ⋆ Homeostasis
Informed Consent ⋆ Faith-Based Healing
Holistic, Natural, Organic ⋆ Fellowship

_____
Member Signature

Issued: 8/8/2021
Valid Through: 8/8/2031

EXHIBIT  D

April  Jimenez-Mendez

 Gmail

**Ray Hacke <rhacke@pji.org>**

---

### Re: FW: Secure: Jimenez Mendez, April - Decision on your vaccine exception request
1 message

---

**April Jimenez** <apriljmnz857@gmail.com>                                    Sun, Aug 13, 2023 at 9:08 PM
To: Ray Hacke <rhacke@pji.org>

> On Sun, Oct 17, 2021 at 9:55 PM April Jimenez Mendez <jimeneap@ohsu.edu> wrote:

April Jimenez Mendez

Patient Resource Specialist



3303 SW Bond Ave

Portland,OR 97239

Phone:503-494-7400

Fax:503-494-4749

---

**From:** Vaccine Exception Review Committee <verc@ohsu.edu>
**Sent:** Friday, October 15, 2021 10:21 AM
**To:** April Jimenez Mendez <jimeneap@ohsu.edu>
**Cc:** Todd Flannery <flannert@ohsu.edu>; Vaccine Exception Review Committee <verc@ohsu.edu>; Genavee Stokes-Avery <stokesav@ohsu.edu>
**Subject:** Secure: Jimenez Mendez, April - Decision on your vaccine exception request

Dear April,

OHSU has completed its review of your request for an exception to the COVID-19 vaccine requirement. Based on the information you submitted and OHSU's narrow criteria established under the law for approvals, you are **not approved for a religious exception**. This is a final decision and may not be appealed.

Please know that each review had two independent assessments by members of the Vaccine Exception Review Committee, which included representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness. These decisions were made using specific criteria to determine if your request met the legal definition of a religious or medical exception.

The vast majority of these denials were because the requestor did not meet the legal requirements for a religious exception, but instead stated personal beliefs or conscientious objections as opposed to a fundamental tenet of a religious faith. Examples of beliefs that did not qualify for a religious exception include:

• Arguments for free will, religious freedom or against compulsion.

• Concerns over vaccine safety or content.

• An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.

• A personal revelation from God about the vaccine.

• An objection to the COVID vaccine based upon bodily integrity or sanctity and/or a belief that the vaccine is "unclean."

We understand this is difficult news to receive and recognize that you may have deeply held personal convictions which nonetheless do not meet the narrow legal requirements for a religious exception. **OHSU values you and hopes you will consider getting vaccinated in order to remain an OHSU member**. You can still get vaccinated, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you.

Monday, Oct. 4 is the last day you can get a Johnson & Johnson vaccine in time to be fully vaccinated and compliant with the policy by Oct. 18. If you become partially vaccinated prior to the Oct. 18 deadline, please be sure to upload your vaccination record as soon as possible in Enterprise Health. Please also discuss with your manager your intentions regarding vaccination going forward.

As you know, any OHSU member who is not compliant with the vaccine policy by Oct. 18 cannot continue to work, study or volunteer. Specifics on what this means for you, based on your representation group or member type, is coming soon.

OHSU firmly stands behind the community benefit of vaccination against COVID-19. The decision not to get vaccinated can have negative consequences to the unvaccinated person and to those around them. While we acknowledge each individual's right to their opinion and choice about vaccination, we also need to ensure OHSU sets policy to protect our patients and our community.

Sincerely,


Vaccine Exception Review Committee

Ariana Jimenez-Mendez

**Ariana Jimenez Mendez**

| | |
|---|---|
| **From:** | Vaccine Exception Review Committee <now@ohsu.edu> |
| **Sent:** | Monday, October 4, 2021 3:03 PM |
| **To:** | Ariana Jimenez Mendez |
| **Subject:** | Your religious exception request was not approved |

OHSU NOW

Dear Ariana,

OHSU has completed its review of your request for an exception to the COVID-19 vaccine requirement. Based on the information you submitted and OHSU's narrow criteria established under the law for approvals, you are **not approved for a religious exception**. This is a final decision and may not be appealed.

Please know that each review had two independent assessments by members of the Vaccine Exception Review Committee, which included representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness. These decisions were made using specific criteria established under the law to determine if your request met the legal definition of a religious or medical exception.

The vast majority of these denials were because the requestor did not meet the legal requirements for a religious exception, but instead stated personal beliefs or conscientious objections as opposed to a fundamental tenet of a religious faith. Examples of beliefs that did not qualify for a religious exception include:

- Arguments for free will, religious freedom or against compulsion.
- Concerns over vaccine safety or content.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
- A personal revelation from God about the vaccine.
- An objection to the COVID vaccine based upon bodily integrity or sanctity and/or a belief that the vaccine is "unclean."

We understand this is difficult news to receive and recognize that you may have deeply held personal convictions which nonetheless do not meet the narrow legal requirements for a religious exception. **OHSU values you and hopes you will consider getting vaccinated in order to remain an OHSU member**. You can still get vaccinated, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you.

Today, Oct. 4 is the last day you can get a Johnson & Johnson vaccine in time to be fully vaccinated and compliant with the policy by Oct. 18. If you become partially vaccinated prior to the Oct. 18 deadline, please be sure to upload your vaccination

record as soon as possible in Enterprise Health. Please also discuss with your manager your intentions regarding vaccination going forward.

As you know, any OHSU member who is not compliant with the vaccine policy by Oct. 18 cannot continue to work, study or volunteer. Specifics on what this means for you, based on your representation group or member type, is coming soon.

OHSU firmly stands behind the community benefit of vaccination against COVID-19. The decision not to get vaccinated can have negative consequences to the unvaccinated person and to those around them. While we acknowledge each individual's right to their opinion and choice about vaccination, we also need to ensure OHSU sets policy to protect our patients and our community.

Trouble reading this message?
View in a browser

Dinah  Cernava

**From:** Human Resources <now@ohsu.edu>
**Sent:** Monday, October 11, 2021 8:44 PM
**To:** Dinah Cernava
**Subject:** OHSU's COVID-19 vaccine requirement: What to expect Oct. 19

---

This email provides additional information following the notice you received that your request for an exception to OHSU's COVID-19 vaccine requirement was not approved.

As that notice indicated, if you are not compliant with the vaccine policy by Oct. 18 you cannot continue to work. To provide you additional time to consider becoming fully vaccinated, you will be placed on unpaid leave effective Oct. 19 for up to 45 days (Dec. 2, 2021).

Once unpaid leave begins, you may use your PTO or vacation accruals through at least Oct. 31 to continue your pay. If you provide documentation of vaccination by Oct. 31, you may continue to use your accruals until you are fully vaccinated and can return to work. Otherwise, access to your accruals will end beginning Nov. 1.

If you are not fully vaccinated within 45 days from the start of your unpaid leave, you will be laid off from your position effective Dec. 2, 2021 with no recall rights. Your employment with OHSU will end.

If you have made a final decision to remain unvaccinated, you may end your employment with OHSU at any time by providing written notice to your direct supervisor.

OHSU values you and hopes you will consider getting vaccinated in order to continue your employment. We regret the loss of any OHSU member as a result of the vaccine policy. However, we firmly stand behind the community benefit of vaccination against COVID-19.

If you have questions, please email hrcomm@ohsu.edu or contact your HR Business Partner.

Inna  Khimich



Human Resources
Employee and Labor Relations
hcbpteam@ohsu.edu
Mail code: HR
3181 S.W. Sam Jackson Park Rd.
Portland, OR 97239

April 4, 2022
Khimich, Inna
P.O. Box 66232
Portland, OR 97290

**Re: Final notice about your employment**

Dear Inna,

This letter serves as final notice that your employment with OHSU has been terminated effective **March 25, 2022** due to non-compliance with OHSU Policy 03-30-150 COVID-19 Immunizations and Education.

If applicable, a final paycheck will be sent in a separate mailing to this address.

Please work with your former supervisor to arrange the return of any OHSU equipment, keys, and your ID badge as soon as possible, if necessary.

Thank you for your service to OHSU and the people of Oregon. We regret losing you as an OHSU member, and wish you the very best in your future endeavors.

OHSU Human Resources

Kristen Lund, Director, Nursing HC. Pre-Operative Medicine Clinic
Elizabeth Sukowatey, Manager HC. Periop Administration
OHSU Healthcare

Kseniya Parkhotyuk

**From:** Kseniya Parkhotyuk
**Sent:** Sunday, October 17, 2021 9:22 PM
**To:** My Email
**Subject:** Fw: Your religious exception request was not approved

**Kseniya Parkhotyuk, BSRT, RRT-NPS**

Senior Research Assistant/Respiratory Therapist
Department of Pediatrics
Oregon Health & Science University
3550 SW US Veterans Hospital Rd
Portland, OR 97239
parkhotk@ohsu.edu

**From:** Vaccine Exception Review Committee <now@ohsu.edu>
**Sent:** Friday, October 1, 2021 5:59 PM
**To:** Kseniya Parkhotyuk
**Subject:** Your religious exception request was not approved

OHSUNOW

Dear Kseniya ,

OHSU has completed its review of your request for an exception to the COVID-19
vaccine requirement. Based on the information you submitted and OHSU's narrow
criteria established under the law for approvals, you are **not approved for a religious
exception**. This is a final decision and may not be appealed.

Please know that each review had two independent assessments by members of the
Vaccine Exception Review Committee, which included representatives from AAEO,
Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and
Student Health and Wellness. These decisions were made using specific criteria
established under the law to determine if your request met the legal definition of a
religious or medical exception.

The vast majority of these denials were because the requestor did not meet the long-
established legal requirements for any religious exception, but instead stated personal

beliefs or conscientious objections as opposed to a fundamental tenet of a religious faith. Examples of beliefs that did not qualify for a religious exception include:

- Arguments for free will, religious freedom or against compulsion.
- Concerns over vaccine safety or content.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
- A personal revelation from God about the vaccine.
- An objection to the COVID vaccine based upon bodily integrity or sanctity and/or a belief that the vaccine is "unclean."

We understand this is difficult news to receive and recognize that you may have deeply held personal convictions which nonetheless do not meet the narrow legal requirements for a religious exception. **OHSU values you and hopes you will consider getting vaccinated in order to remain an OHSU member**. You can still get vaccinated, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you.

Monday, Oct. 4 is the last day you can get a Johnson & Johnson vaccine in time to be fully vaccinated and compliant with the policy by Oct. 18. If you become partially vaccinated prior to the Oct. 18 deadline, please be sure to upload your vaccination record as soon as possible in Enterprise Health. Please also discuss with your manager your intentions regarding vaccination going forward.

As you know, any OHSU member who is not compliant with the vaccine policy by Oct. 18 cannot continue to work, study or volunteer. Specifics on what this means for you, based on your representation group or member type, is coming soon.

OHSU firmly stands behind the community benefit of vaccination against COVID-19. The decision not to get vaccinated can have negative consequences to the unvaccinated person and to those around them. While we acknowledge each individual's right to their opinion and choice about vaccination, we also need to ensure OHSU sets policy to protect our patients and our community.

Trouble reading this message?

View in a browser

**From:** Kseniya Parkhotyuk
**Sent:** Sunday, October 17, 2021 9:16 PM
**To:** My Email
**Subject:** Fw: Thank you

**Kseniya Parkhotyuk, BSRT, RRT-NPS**

Senior Research Assistant/Respiratory Therapist
Department of Pediatrics
Oregon Health & Science University
3550 SW US Veterans Hospital Rd
Portland, OR 97239
parkhotk@ohsu.edu

**From:** OHSU Board
**Sent:** Thursday, October 14, 2021 9:45 AM
**To:** Kseniya Parkhotyuk
**Subject:** Re: Thank you

Dear Kseniya Parkhotyuk,

Your message has been received by the OHSU Board of Directors. We thank you for reaching out and sharing your perspective.

Sincerely,

OHSU Board of Directors

**From:** Kseniya Parkhotyuk <parkhotk@ohsu.edu>
**Date:** Tuesday, October 12, 2021 at 2:26 PM
**To:** OHSU Now <now@ohsu.edu>, Human Resources Communications <hrcomm@ohsu.edu>
**Cc:** Danny Jacobs <jacobsda@ohsu.edu>, OHSU Board <ohsuboard@ohsu.edu>
**Subject:** Thank you

To whom it may concern,
I have submitted paperwork of my antibody test that proves that I have antibodies against covid-19. I hope that the policy will be revised and you will take the titer, due to studies showing that natural immunity provides the same or even better protection against Covid-19. I am willing to follow any other rules and am willing to not work with patients and get tested frequently. You cannot mandate a vaccine that is still in active trial. I plead you revisit the mandate to accommodate those who worked so hard for many many years.

You dared to tell us that our beliefs don't matter, spit in our face, telling us that if God told you not to take vaccine that doesn't qualify? Did you know that Bible is the word of God and "religion" isn't just going to church and hanging out with other believers. It's about relationship with God, who speaks to us through His word and through prayer. So you telling me that what God told me doesn't matter? Shame on you! I provided scriptures specifically backing up my reasons not to take it. Did you even have a believer, TRUE believer in your panel of reviewers? I'm sure you didn't. Because as usual, you all have people who review different policies, who are clueless about reality. Who only get paid millions, but know nothing about work that us employees do. You can take away my freedom because u feel it fit, take away my paycheck that feeds my kids, take away insurance from my kids, but you won't take my joy and my faith in my God.

All over the hospital there are signs of how OHSU doesn't discriminate against anyone, specifically "We do not tolerate harming others with words or actions". You are a liar, because you discriminate against Christians, since you denied most of the exemptions and should re-think/re-write your statement. You are hurting your staff by forcing them to do something against their will and their beliefs. The only people you care about are people of color, LGBTQ and illegal immigrants, all others don't matter to you because we just make you money, and do nothing to make your public appearance colorful. Your good deeds for other groups are praised by the news, you want to look good in front of public, but you spit in your own people's faces. Those faces are the ones who keep your hospital #1 hospital in OR. You are NOT keeping it #1, those good ratings are all thanks to your hard working staff that you are hurting. Everyone is already burned out due to pandemic, you are about to lose a lot of people who don't deserve this treatment.
I can go on and on, but I think you got my point.

You are taking away my dream job that I loved doing. The research that I was part of will save lives of many little babies in the NICU. And I am proud to have been part of it. Thank you for providing the babies with this great opportunity to be part of research, for providing them with hope. I will just rejoice over the outcomes from the sideline (hoping the research I was doing doesn't stop, because I was the key member) and hope that someday I can come back and love my job again.
I pray that God visits you, that He encounters you and gives you wisdom to go against the evil.

I am attaching my antibody test result.

Sincerely,
Respiratory Therapist and a Senior Research assistant that helped bring you alot of money by research,
Kseniya.

On Oct 11, 2021 8:51 PM, Human Resources <now@ohsu.edu> wrote:

> This email provides additional information following the notice you received that your request for an exception to OHSU's COVID-19 vaccine requirement was not approved.
>
> As that notice indicated, if you are not compliant with the vaccine policy by Oct. 18 you cannot continue to work. To provide you additional time to consider becoming fully vaccinated, you will be placed on unpaid leave effective Oct. 19 for up to 45 days (Dec. 2, 2021).

Once unpaid leave begins, you may use your PTO or vacation accruals through at least Oct. 31 to continue your pay. If you provide documentation of vaccination by Oct. 31, you may continue to use your accruals until you are fully vaccinated and can return to work. Otherwise, access to your accruals will end beginning Nov. 1.

If you are not fully vaccinated within 45 days from the start of your unpaid leave, you will be deemed to have resigned and your employment with OHSU will end effective Dec. 2, 2021.

If you have made a final decision to remain unvaccinated, you may end your employment with OHSU at any time by providing written notice to your direct supervisor.

OHSU values you and hopes you will consider getting vaccinated in order to continue your employment. We regret the loss of any OHSU member as a result of the vaccine policy. However, we firmly stand behind the community benefit of vaccination against COVID-19.

If you have questions, please email hrcomm@ohsu.edu or contact your HR Business Partner.

Trouble reading this message?
View in a browser

Lisa Carvalho



OHSU

Dec. 3, 2021

Human Resources

hrcomm@ohsu.edu

Mail code: HR
3181 S.W. Sam Jackson Park Rd.
Portland, OR 97239

Carvalho, Lisa
PO Box 166
Langlois, OR 97450-0166

**Re: Final notice about your employment**

This letter serves as final notice that your employment with OHSU has been
terminated effective Dec. 2, 2021, due to non-compliance with OHSU Policy
03-30-150 COVID-19 Immunizations and Education.

A final paycheck will be sent in a separate mailing to this address. If your
net pay is zero, it's because applicable deductions offset your earnings;
however, the gross earnings will be reported on your W-2 form.

If you had active benefits coverage in November, your coverage will
continue through Dec. 31, 2021. Within 45 days following termination of
your benefits, you will be sent an information packet about the option to
continue benefits through COBRA.

Please work with your former supervisor to arrange the return of any
OHSU equipment, keys, and your ID badge as soon as possible, if necessary.

Thank you for your service to OHSU and the people of Oregon. We regret
losing you as an OHSU member, and wish you the very best in your future
endeavors.

OHSU Human Resources

Employee ID#: 77468

EXHIBIT  E

April Jimenez-Mendez



May 19, 2023

ABRIL JIMENEZ MENDEZ

,

RE:    Complainant:    Abril Jimenez Mendez
       Respondent:    Oregon Health & Science University
       Case #:        STEMRG220815-12088

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: May 19, 2023

Enclosure(s)
cc:    Ray D Hacke, Complainant's Attorney

   

Ariana Jimenez-Mendez



May 19, 2023

ARIANA JIMENEZ MENDEZ
C/O JANZEN LEGAL SERVICES LLC
4550 SW HALL BLVD
BEAVERTON, OR 97005

RE:    Complainant:    Ariana Jimenez Mendez
       Respondent:     Oregon Health & Science University
       Case #:         STEMRG220815-12090

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: May 19, 2023

Enclosure(s)
cc:    Ray D Hacke, Complainant's Attorney

   

Dinah  Cernava



July 25, 2023

DINAH V CERNAVA
C/O JANZEN LEGAL SERVICES, LLC
4550 SW HALL BLVD.
BEAVERTON, OR 97005

RE:    Complainant:   Dinah V Cernava
       Respondent:    Oregon Health & Science University Dba Ohsu
       Case #:        EEEMRG220812-11540
       EEOC #:        38D-2023-00114

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing:** July 25, 2023

Enclosure(s)
cc:    Ray D Hacke, Complainant's Attorney






---

### Civil Rights Division – Bureau of Labor & Industries
### Complaint Dismissal Memo

---

Complainant:    Dinah V Cernava
Respondent:    Oregon Health & Science University Dba Ohsu
Case Number:    EEEMRG220812-11540
Date:    July 23, 2023
Investigator:    Michael Mohr

Reviewed By:    _____ Theodore E. Wenk

---

Complainant alleged Respondent's actions violated ORS 659A.030 in that her request for religious based exemption to Covid-19 vaccination was denied. Complainant worked for Respondent in preadmission screening. Per ORS 659A.030(1)(a), it is an unlawful employment practice to terminate a person's employment based on their religion.

Respondent's Position Statement asserts Complainant's request did not provide sufficient nexus to fundamental religious tenet or behavior and alternatively the request presented undue hardship and couldn't be accommodated as Complainant's work cannot be performed remotely thereby presenting health hazard to patients and others on site.

The United States Supreme Court, in *Gerald E. Groff v. Louis DeJoy, Postmaster General Hardison*, 600 U.S. ____ (2023), defined "undue" and "hardship" as defined in Webster's Third, Random House and American Heritage Dictionaries (e.g. an inappropriate privation). The Court further delineates, "that courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of thenature, "size and operating cost of [an] employer." (Groff p. 18). In the present matter, the volume of requests alone constituted hardship. More to the point is that Respondent's policy was part of a world-wide pandemic response as well as a State of Emergency declaration; not following best practice guidance presented undue hardship at points relevant to this complaint.

An additional consideration is as to whether Respondent acts were directed towards religious belief. Substantial evidence isn't presented that Respondent's policy is attributable to "animosity to a particular religion, to religion in general or to the very notion of accommodating religious practice" (*Groff* p.20). The matter is dismissed.

Inna  Khimich



June 1, 2023

INNA KHIMICH
JANZEN LEGAL SERVICES, LLC
4550 SW HALL BLVD
BEAVERTON, OR 97005

RE:    Complainant:    Inna Khimich
       Respondent:     Oregon Health & Science University
       Case #:         EEEMRG220805-11278
       EEOC #:         38D-2022-00817

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: June 1, 2023

Enclosure(s)
cc:    Ray D Hacke, Complainant's Attorney

   

# Substantial Weight Review Procedure

Complaints co-filed under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (ADEA), or the Americans with Disabilities Act (ADA) are enforced by the Equal Employment Opportunity Commission (EEOC). The EEOC generally will adopt the findings of the Civil Rights Division; however, the Complainant has the option of requesting a review of this action. Upon receipt of the attached letter, the Complainant has 15 days to make a written request for a review to:

Equal Employment Opportunity Commission
Federal Office Building
909 First Avenue #400
Seattle WA  98104-1061

Rev. 10-4-10

Kseniya Parkhotyuk



**CHRISTINA E. STEPHENSON**
Labor Commissioner

July 21, 2023

KSENIYA PARKHOTYUK
C/O JANZEN LEGAL SERVICES, LLC
4550 SW HALL BLVD
BEAVERTON, OR 97005

RE:  Complainant:  Kseniya Parkhotyuk
     Respondent:   Oregon Health & Science University
     Case #:       STEMRG220928-11943

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation.</u>***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: July 21, 2023

Enclosure(s)
cc:   Ray D Hacke, Complainant's Attorney

   

**Civil Rights Division – Bureau of Labor & Industries**
**Complaint Dismissal Memo**

| | |
|---|---|
| Complainant: | Kseniya Parkhotyuk |
| Respondent: | Oregon Health & Science University |
| Case Number: | STEMRG220928-11943 |
| Date: | July 20, 2023 |
| Investigator: | Michael Mohr |
| Reviewed By: | Theodore E. Wenk |

Respondent reached a determination that Complainant could not perform essential job duties without receiving a COVID-19 vaccine. Even assuming that any Respondent assessment of Complainant's exemption request is incorrect, its refusal of Complainant's preferred accommodation is based upon health and safety concerns deemed bona fide by credible sources and is sufficient to deny Complainant's requests for a religious exemption and/or accommodation from or to Respondent's vaccine policy in this matter as more than an undue organizational hardship was presented to Respondent at all points relevant to the complaint.

The complaint is dismissed with issuance of Civil Suit Notice right to file the claim in state court.

Lisa Carvalho

**CHRISTINA E. STEPHENSON**
Labor Commissioner

June 5, 2023

LISA-MARIE CARVALHO
C/O JANZEN LEGAL SERVICES, LLC
4550 SW HALL BLVD
BEAVERTON, OR 97005

RE:    Complainant:    Lisa-Marie Carvalho
       Respondent:     Oregon Health & Science University
       Case #:         EEMRG220810-11499
       EEOC #:         38D-2023-00080

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires one year from the date of the alleged violation.*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing: June 5, 2023**

Enclosure(s)
cc:    Ray D Hacke, Complainant's Attorney




# Substantial Weight Review Procedure

Complaints co-filed under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (ADEA), or the Americans with Disabilities Act (ADA) are enforced by the Equal Employment Opportunity Commission (EEOC).  The EEOC generally will adopt the findings of the Civil Rights Division; however, the Complainant has the option of requesting a review of this action.  Upon receipt of the attached letter, the Complainant has 15 days to make a written request for a review to:

<div align="center">

Equal Employment Opportunity Commission

Federal Office Building

909 First Avenue #400

Seattle WA  98104-1061

</div>

Rev. 10-4-10

G:\CRD\FORMS\Releases, Waivers, Notices\Substantial Weight Review Procedure Notification.doc

EXHIBIT  F

April Jimenez-Mendez


**TRODELVY® is different from traditional chemo**
Please see **Important Facts**, including Important Warning for low white blood cell count and diarrhea.

TRODELVY®
sacituzumab govitecan-hziy
180 mg for infusion

timeanddate

Home | Calculators | Date Calculator | Results

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days | **Add Days** | Workdays | Add Workdays | Weekday | Week №

## Start Date

| Month: | Day: | Year: | Date: | | Add/Subtract: | Years: | Months: | Weeks: | Days: |
|--------|------|-------|-------|---|---------------|--------|---------|--------|-------|
| 5 | / 19 | / 2023 | 📅 | | (+) Add ⌄ | | | | 90 |

Today

Include the time                                    Include only certain weekdays

☐ Repeat

**Calculate New Date**

From **Friday, May 19, 2023**
Added 90 days

---

**Result: Thursday, August 17, 2023**

◀ Make adjustment and calculate again                    Start Again ▶

### Calendar showing period from May 19, 2023 to August 17, 2023

**May 2023**
12 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | **19** | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

**June 2023**
30 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     |     | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

**July 2023**
31 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     |     |     |     | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

**August 2023**
17 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | **17** | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

 = Start date (May 19, 2023)     = Final result date (Aug 17, 2023)

## Make a New Calculation

- Make adjustment and calculate again
- New calculation with Thursday, August 17, 2023 as starting point
- New calculation (no time)
- New calculation with both date and time included

❓ **Need some help?**

## Help and Example Use

- Some typical uses for the Date Calculators

**Time & Date Calculator App for iOS**
See how long remains before a deadline or
exactly when those 30 days are up.

## Date Calculators

- Date Calculator – Add or subtract days, months, years
- Duration Between Two Dates – Calculates number of days.
- Time and Date Duration – Calculate duration, with both date and time included
- Birthday Calculator – Find when you are 1 billion seconds old

## Related Links

- Date/calendar related services – Overview
- Calendar Generator – Create a calendar for any year.
- The World Clock – Current time all over the world
- Countdown to any date

How was your experience?                      Contact Us ✉

**Love Our Site? Become a Supporter**
- Browse our site advert free.
- Sun & Moon times precise to the second.
- Exclusive calendar templates for PDF Calendar.

**Company**
About us
Careers/Jobs
Contact Us
Contact Details
Sitemap
Newsletter

**Legal**
Link policy
Advertising
Disclaimer
Terms & Conditions
Privacy Policy
My Privacy

**Services**
World Clock
Time Zones
Calendar
Weather
Sun & Moon
Timers
Calculators
API

**Follow Us**
f ✕ in 📷 ▶

**Sites**
timeanddate.no
timeanddate.de



# Ariana Jimenez-Mendez

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days     **Add Days**     Workdays     Add Workdays     Weekday     Week №

From **Friday, May 19, 2023**
Added 90 days

### Result: Thursday, August 17, 2023

**Calendar showing period from May 19, 2023 to August 17, 2023**

#### May 2023
12 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |  |  |  |

#### June 2023
30 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |  |

#### July 2023
31 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |  |  |  |  |  |

#### August 2023
17 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |  |  |

☐ = Start date (May 19, 2023)     ☐ = Final result date (Aug 17, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

Advertising

AD



**TODAY'S POLL:**

Should illegal immigrants receive social security?

a) Yes
b) No
c) Unsure

⊃ VOTE NOW    RIGH

Dinah  Cernava


   

GET THE PARAMOUNT+ WITH SHOWTIME PLAN

STREAMING ON Paramount+

TRY IT FREE

TERMS & CONDITIONS APPLY

| Home | World Clock ˅ | Time Zones ˅ | Calendar ˅ | Weather ˅ | Sun & Moon ˅ | Timers ˅ | Calculators ˅ | Apps & API ˅ | Free Fun ˅ | 👤 ˅ | 🔗 | 🔍 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

Home / Calculators / Date Calculator / Results

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days | **Add Days** | Workdays | Add Workdays | Weekday | Week №

## Start Date

**Month:** 7  / **Day:** 25 / **Year:** 2023  **Date:** 📅

Today

Include the time

☐ **Repeat**

**Add/Subtract:**  (+) Add ˅

**Years:** [ ]  **Months:** [ ]  **Weeks:** [ ]  **Days:** 90

Include only certain weekdays

[ **Calculate New Date** ]

Advertising



AXE IS BACK

BILLIONS
THE FINAL SEASON

STREAMING ON Paramount+

TRY IT FREE

PARAMOUNT+ WITH SHOWTIME PLAN ONLY

From **Tuesday, July 25, 2023**
Added 90 days

**Result: Monday, October 23, 2023**

◀ Make adjustment and calculate again

Start Again ▶

### Calendar showing period from July 25, 2023 to October 23, 2023

**July 2023** — 6 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | **25** | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

**August 2023** — 31 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

**September 2023** — 30 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

**October 2023** — 23 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | **23** | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

☐ = Start date (Jul 25, 2023)   ☐ = Final result date (Oct 23, 2023)

## Make a New Calculation

- Make adjustment and calculate again
- New calculation with Monday, October 23, 2023 as starting point
- New calculation (no time)
- New calculation with both date and time included

❓ **Need some help?**

## Help and Example Use

- Some typical uses for the Date Calculators

## Date Calculators

- Date Calculator – Add or subtract days, months, years
- Duration Between Two Dates – Calculates number of days.
- Time and Date Duration – Calculate duration, with both date and time included
- Birthday Calculator – Find when you are 1 billion seconds old

## Related Links

- Date/calendar related services – Overview
- Calendar Generator – Create a calendar for any year.
- The World Clock – Current time all over the world
- Countdown to any date

 **Time & Date Calculator App for iOS**
See how long remains before a deadline or exactly when those 30 days are up.

How was your experience? 👍 👎

Contact Us ✉

**Love Our Site? Become a Supporter**

- Browse our site advert free.
- Sun & Moon times precise to the second.
- Exclusive calendar templates for PDF Calendar.

**Company**
About us
Careers/Jobs
Contact Us
Contact Details
Sitemap
Newsletter

**Legal**
Link policy
Advertising
Disclaimer
Terms & Conditions
Privacy Policy
My Privacy

**Services**
World Clock
Time Zones
Calendar
Weather
Sun & Moon
Timers
Calculators
API

**Follow Us**


**Sites**
timeanddate.no
timeanddate.de

 timeanddate
© Time and Date AS 1995–2023

Inna  Khimich

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

**Count Days**     **Add Days**     **Workdays**     **Add Workdays**     **Weekday**     **Week №**

From **Thursday, June 1, 2023**
Added 90 days

## Result: Wednesday, August 30, 2023

### Calendar showing period from June 1, 2023 to August 30, 2023

| June 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 29 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

| July 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 31 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

| August 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 30 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

☐ = Start date (Jun 1, 2023)     ☐ = Final result date (Aug 30, 2023)



**Time & Date Calculator App for iOS**
See how long remains before a deadline or exactly when those 30 days are up.

Kseniya Parkhotyuk


    

GET THE PARAMOUNT+ WITH SHOWTIME PLAN    STREAMING ON Paramount+    TRY IT FREE    TERMS & CONDITIONS APPLY

Home | World Clock ˅ | Time Zones ˅ | Calendar ˅ | Weather ˅ | Sun & Moon ˅ | Timers ˅ | Calculators ˅ | Apps & API ˅ | Free Fun ˅    | 👤 ˅ | 🔗 | 🔍

Home / Calculators / Date Calculator / Results

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days | **Add Days** | Workdays | Add Workdays | Weekday | Week №

## Start Date

| Month: | Day: | Year: | Date: | | Add/Subtract: | Years: | Months: | Weeks: | Days: |
|---|---|---|---|---|---|---|---|---|---|
| 7 | 21 | 2023 | 📅 | | (+) Add ˅ | | | | 90 |

Today

Include the time                        Include only certain weekdays

☐ Repeat

[ Calculate New Date ]

From **Friday, July 21, 2023**
Added 90 days
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Result: Thursday, October 19, 2023**

◄ Make adjustment and calculate again                    Start Again ▶

Calendar showing period from July 21, 2023 to October 19, 2023

| July 2023 10 days added | August 2023 31 days added | September 2023 30 days added | October 2023 19 days added |
|---|---|---|---|

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | **21** | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | **19** | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

☐ = Start date (Jul 21, 2023)    ☐ = Final result date (Oct 19, 2023)

## Make a New Calculation

- Make adjustment and calculate again
- New calculation with Thursday, October 19, 2023 as starting point
- New calculation (no time)
- New calculation with both date and time included

❓ Need some help?

## Help and Example Use

- Some typical uses for the Date Calculators

 **Time & Date Calculator App for iOS**
See how long remains before a deadline or exactly when those 30 days are up.

## Date Calculators

- Date Calculator – Add or subtract days, months, years
- Duration Between Two Dates – Calculates number of days.
- Time and Date Duration – Calculate duration, with both date and time included
- Birthday Calculator – Find when you are 1 billion seconds old

## Related Links

- Date/calendar related services – Overview
- Calendar Generator – Create a calendar for any year.
- The World Clock – Current time all over the world
- Countdown to any date

How was your experience? 👍 👎                              Contact Us ✉

  

**Love Our Site? Become a Supporter**
- Browse our site advert free.
- Sun & Moon times precise to the second.
- Exclusive calendar templates for PDF Calendar.

**Company**
About us
Careers/Jobs
Contact Us
Contact Details
Sitemap
Newsletter

**Follow Us**
  

**Legal**
Link policy
Advertising
Disclaimer
Privacy Policy
Terms & Conditions
My Privacy

**Sites**
timeanddate.no
timeanddate.de

**Services**
World Clock
Time Zones
Calendar
Weather
Sun & Moon
Timers
Calculators
API

timeanddate
© Time and Date AS 1995–2023

Lisa  Carvalho

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days    **Add Days**    Workdays    Add Workdays    Weekday    Week №

From **Monday, June 5, 2023**
Added 90 days

## Result: Sunday, September 3, 2023

### Calendar showing period from June 5, 2023 to September 3, 2023

**June 2023**
25 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     |     | 1   | 2   | 3   |
| 4   | 5   | 6   | 7   | 8   | 9   | 10  |
| 11  | 12  | 13  | 14  | 15  | 16  | 17  |
| 18  | 19  | 20  | 21  | 22  | 23  | 24  |
| 25  | 26  | 27  | 28  | 29  | 30  |     |

**July 2023**
31 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     |     |     |     | 1   |
| 2   | 3   | 4   | 5   | 6   | 7   | 8   |
| 9   | 10  | 11  | 12  | 13  | 14  | 15  |
| 16  | 17  | 18  | 19  | 20  | 21  | 22  |
| 23  | 24  | 25  | 26  | 27  | 28  | 29  |
| 30  | 31  |     |     |     |     |     |

**August 2023**
31 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     | 1   | 2   | 3   | 4   | 5   |
| 6   | 7   | 8   | 9   | 10  | 11  | 12  |
| 13  | 14  | 15  | 16  | 17  | 18  | 19  |
| 20  | 21  | 22  | 23  | 24  | 25  | 26  |
| 27  | 28  | 29  | 30  | 31  |     |     |

**September 2023**
3 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     |     |     | 1   | 2   |
| 3   | 4   | 5   | 6   | 7   | 8   | 9   |
| 10  | 11  | 12  | 13  | 14  | 15  | 16  |
| 17  | 18  | 19  | 20  | 21  | 22  | 23  |
| 24  | 25  | 26  | 27  | 28  | 29  | 30  |

☐ = Start date (Jun 5, 2023)    ☐ = Final result date (Sep 3, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

Advertising

AD **TERMITTENT FASTIN**
according to your age



AGE: 18-35    12:12
Fasting

Breakfast

Lunch

Dinner

AGE: 65+
Breakfast

Lunch

Dinner

AGE: 35-45    14:10
Fasting

Breakfast

Lunch

AGE: 45-65
Breakfast

Lunch

Dinner

Fasting