IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ABRIL "APRIL" JIMENEZ-MENDEZ**, an individual, **ARIANA JIMENEZ-MENDEZ**, an individual, **INNA KHIMICH**, an individual, **LISA CARVALHO**, an individual, **DINAH CERNAVA**, an individual, and **KSENIYA PARKHOTYUK**, an individual,<br><br>        Plaintiffs,<br><br>        v.<br><br>**OREGON HEALTH AND SCIENCE UNIVERSITY**, a public corporation and governmental entity, and **DOES 1 THROUGH 50**, inclusive,<br><br>        Defendants. | Case No. 3:23-cv-01190-IM<br><br>**OPINION AND ORDER GRANTING DEFENDANTS DOES 1 THROUGH 50'S MOTION TO DISMISS** |

Ray D. Hacke, Pacific Justice Institute, 317 Court St. NE, Suite 202, Salem, OR 97301. Attorney for Plaintiffs.

Brenda K. Baumgart, Thomas R. Johnson, and Alex Van Rysselberghe, Stoel Rives LLP, 760 S.W. Ninth Ave., Suite 3000, Portland, OR 97205. Attorneys for Defendants.

PAGE 1 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**IMMERGUT, District Judge.**

This case arises out of Defendant Oregon Health and Science University's ("OHSU") denial of religious exemptions to its employee COVID-19 vaccine mandate in Fall 2021. Plaintiffs Abril Jimenez-Mendez, Ariana Jimenez-Mendez, Inna Khimich, Lisa Carvalho, Dinah Cernava, and Kseniya Parkhotyuk are former employees at OHSU who were denied exemptions and subsequently lost their jobs. They have filed claims of religious discrimination and a failure to accommodate under Title VII of the Civil Rights Act against Defendant OHSU. And they have filed a 42 U.S.C. § 1983 claim under the Free Exercise Clause of the First Amendment against Does 1 through 50, unnamed individuals on OHSU's Vaccine Exception Review Committee ("VERC") that denied religious exemptions to Plaintiffs. Complaint ("Compl."), ECF 1. These individuals, whom this Court will call the "VERC Defendants," have moved to dismiss the First Amendment claim, invoking the doctrine of qualified immunity. Motion to Dismiss ("MTD"), ECF 7.

This Court GRANTS the Motion to Dismiss with prejudice. Because Plaintiffs cite no clearly established law that would have put the VERC Defendants on notice that they allegedly violated Plaintiffs' Free Exercise right, the VERC Defendants are entitled to qualified immunity.

## BACKGROUND[1]

Plaintiffs were all employees at Defendant OHSU, a governmental entity which runs various hospitals in the Portland area. Compl., ECF 1 ¶¶ 1, 3, 11. Plaintiff Abril "April"

---

[1] The background facts are drawn from the Complaint and various documents Plaintiffs attach to their Complaint. The latter documents are incorporated by reference into the Complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). "When a general conclusion in a complaint contradicts specific facts retold in a document . . . incorporated by reference in the complaint . . . , those specific facts are controlling." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023). Otherwise, at the motion to dismiss stage, this Court must accept all well-pleaded factual allegations from the Complaint as true and draw all

PAGE 2 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Jimenez-Mendez ("April") was a Patient Resource Specialist for Defendant's Knight Cardiovascular Institute for a year. *Id.* ¶ 16. Plaintiff Ariana Jimenez-Mendez ("Ariana") was a PAS Specialist Lead at OHSU Dental Clinics for five years. *Id.* ¶ 17. Plaintiff Inna Khimich was a medical assistant who worked for OHSU for fourteen years. *Id.* ¶ 18. Plaintiff Lisa Carvalho was a Managed Care Coordinator who worked for OHSU for four years. *Id.* ¶ 19. Plaintiff Dinah Cernava was a certified nursing assistant/health unit coordinator who worked for OHSU for fifteen years. *Id.* ¶ 20. And Plaintiff Kseniya Parkhotyuk was a respiratory care practitioner who worked in OHSU's pediatric unit for eight years. *Id.* ¶ 21. All Plaintiffs were exemplary employees. *Id.* ¶ 22. After the onset of the COVID-19 pandemic, Plaintiffs Khimich and April worked from home, *id.* ¶ 18, though they could be mandated to work in person, *see id.* ¶ 29, and Plaintiff April lived with her sister Plaintiff Ariana, *id.* ¶ 27(a).

In August 2021, the Oregon Health Authority enacted a vaccine mandate requiring all healthcare workers employed in Oregon to receive the COVID-19 vaccine by October 18, 2021. *Id.* ¶ 13; *see* O.A.R. 333-019-1010 (effective August 25, 2021 through January 31, 2022). The mandate permitted exceptions on religious grounds. Compl., ECF 1 ¶¶ 13–14. Consistent with the mandate, OHSU required all of its employees to receive the vaccine or qualify for a religious exemption by October 18, 2021. *Id.* ¶ 15. It instructed employees seeking exemptions to file their requests by September 20, 2021. *Id.* ¶ 26. To handle these requests, OHSU assembled an "exception review panel," OHSU Email, ECF 1, Ex. B at 2–3, consisting of the VERC Defendants, Compl., ECF 1 ¶ 3. In an email to its employees, OHSU explained that the panel "expect[ed] that very few of the submitted requests for religious exceptions w[ould] be

---

reasonable inferences in the non-movant's favor. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

PAGE 3 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

approved." OHSU Email, ECF 1, Ex. B at 2. OHSU set forth "[e]xamples of beliefs that do not qualify for a religious exception," including "[a]n objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development" and "[a] personal revelation from God about the vaccine, an objection to the vaccine based upon bodily integrity or sanctity, and/or a belief that the vaccine is 'unclean.'" *Id.* The exemption form included a section asking applicants to provide "any other information regarding [their] beliefs, observances, or practices that would help [the VERC Defendants] evaluate [their] request" such as whether they had "previously declined medical care because of [their] religious beliefs." *See generally* ECF 1, Ex. C (copies of the OHSU exemption form every Plaintiff filled out).

Plaintiffs submitted their exemption forms on September 16, 2021. Compl., ECF 1 ¶ 26. Plaintiffs April and Ariana Jimenez-Mendez both wrote that receiving "a vaccine that uses aborted fetal cells lines in the development or testing of the vaccine violates my sincere held religious beliefs regarding the sanctity and protection of pre-born children." April's Exemption Request, ECF 1, Ex. C at 4; Ariana's Exemption Request, ECF 1, Ex. C at 8. Plaintiff Parkhotyuk's exemption request was substantially similar. *See* Parkhotyuk's Exemption Request, ECF 1, Ex. C at 22. Plaintiff Cernava wrote: "I believe that using an aborted baby's body in medical development is wrong and violates what God tells us to do." Cernava's Exemption Request, ECF 1, Ex. C at 11. Plaintiff Khimich attached a letter from her pastor stating that "[h]er faith establishes a firmly held religious conviction specifically against any vaccinations derived from . . . the research and/or use of aborted human tissue." Letter from Pastor Lew Wootan, ECF 1, Ex. C at 18. And Plaintiff Carvalho submitted a pre-written form from the New Earth Ascending Global Ministries; the form stated that the Ministries' members oppose

PAGE 4 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

"inoculations/vaccinations that use human or animal aborted fetal cell lines in their testing and production." New Earth Ascending Form, ECF 1, Ex. C at 28.

In October 2021, the VERC Defendants rejected every Plaintiff's exemption request. Compl., ECF 1 ¶ 30. OHSU then fired every Plaintiff, but Plaintiff Khimich, in early December 2021. *Id.* ¶ 34. Plaintiff Khimich was fired in March 2022. *Id.*

On August 15, 2023, Plaintiffs filed this suit against Defendant OHSU and the VERC Defendants, whose identities Plaintiffs have not yet ascertained. *See* Compl., ECF 1. Plaintiffs allege that OHSU committed religious discrimination and failed to accommodate for Plaintiffs' religious beliefs under Title VII of the Civil Rights Act, *id.* ¶¶ 40–63, and that the VERC Defendants violated the Free Exercise Clause of the First Amendment, *id.* ¶¶ 64–72. Defendants then responded with the instant Motion to Dismiss on November 20, 2023, arguing that Plaintiffs' First Amendment claim against the VERC Defendants is barred by qualified immunity. *See* MTD, ECF 7.

## LEGAL STANDARDS

A motion brought under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). To be entitled to a presumption of truth, a complaint's allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Off.*

PAGE 5 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

*Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not credit legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

## DISCUSSION

The VERC Defendants contend that they are entitled to qualified immunity from Plaintiffs' First Amendment claim.[2] The doctrine of qualified immunity "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1198 (9th Cir. 2021) (citation and internal quotation marks omitted). "A federal or state official is entitled to qualified immunity 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 886 (9th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

Considering only the second prong, *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009), this Court holds that the VERC Defendants did not violate a clearly established First Amendment right to free exercise of religion.

**A. The Clearly Established Right Test Cannot Be Applied at a High Level of Generality**

It is a heavy burden to prove a clearly established right for the purposes of qualified immunity. As the Supreme Court instructed in *al-Kidd*:

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." We do

---

[2] At this stage, Defendants do not challenge Plaintiffs' ability to state prima facie claims under Title VII, nor do they raise the undue hardship affirmative defense under Title VII.

> not require a case directly on point, but existing precedent must
> have placed the statutory or constitutional question beyond debate.

563 U.S. at 741 (citations and brackets omitted); *see, e.g.*, *Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018) (similar); *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 611–12 (2015) (similar and describing the test as an "exacting standard"); *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015); *Carroll v. Carman*, 574 U.S. 13, 16–17, 20 (2014) (similar and emphasizing that the relevant constitutional rule must be "beyond debate"). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (citation omitted). When courts have seemingly deviated from this demanding standard, the Supreme Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality." *Kisela*, 138 S. Ct. at 1152 (quoting *Sheehan*, 575 U.S. at 613).

Recent Ninth Circuit precedent hews to this rule. *Sabra*—where the Ninth Circuit considered a free exercise claim as here—is instructive. There, a Muslim student sued his community college professor for allegedly disparaging Islam in a world politics course. 44 F.4th at 877–78. Specifically, the student alleged that his professor impermissibly burdened his freedom of religion by assigning a "test requiring [the student] to select answers in conflict with [his] personal religious convictions (or risk losing points)." *Id.* at 890. The Ninth Circuit held that the professor was entitled to qualified immunity because "no case, or body of case law, . . . clearly establishe[d] [the student's] right not to be subjected to a quiz like this one in this case." *Id.* Responding to the dissenting opinion, the Ninth Circuit explained that it was impermissible to frame the applicable constitutional principle as "the state cannot condition a benefit or impose a penalty based on a person's adherence or non-adherence to a religious belief." *Id.* (citation omitted). Doing so, the Ninth Circuit reasoned, "avoids the crucial question

PAGE 7 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

whether the official acted reasonably in the particular circumstances that he or she faced" and "vitiate[s] the protections of qualified immunity by allowing plaintiffs to allege violations of an extremely abstract right." *Id.* (citations and internal quotation marks omitted). As in *Sabra*, therefore, this Court must frame the applicable constitutional rule with an eye toward whether any reasonable person under the circumstances the VERC Defendants faced—denying fetal cell-based requests for religious exemptions to a vaccine mandate during a pandemic—would have known that their actions violated the Free Exercise Clause of the First Amendment.

Contrary to *Sabra* and its precursors, however, Plaintiffs urge this Court to apply an abstract constitutional rule unmoored from the particular circumstances of this case. Quoting *Dodge v. Evergreen School District #114*, 56 F.4th 767 (9th Cir. 2022), they maintain that the Ninth Circuit endorsed such an approach when it wrote that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." Pls.' Resp., ECF 8 at 25 (quoting 56 F.4th at 784). "[T]he language of an opinion," however, "is not always to be parsed as though we were dealing with [the] language of a statute." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373 (2023) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979)). Rather, opinions "must be read with a careful eye to context." *Id.* at 374 (citation omitted).

Read carefully, *Dodge* does not contradict the Supreme Court and Ninth Circuit's strict qualified immunity precedents. *Dodge* says: that courts "are not to frame the issues presented at too high a level of generality"; that courts "must define the rights implicated . . . at a level commensurate with the specific factual and legal context of the case"; and that a plaintiff must "show that the contours of a right are sufficiently clear that *every* reasonable official would have

PAGE 8 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

understood that what he is doing violates that right." *Dodge*, 56 F.4th at 784 (emphasis added) (citations, internal quotation marks, and brackets omitted). Indeed, it is only after reciting these points that *Dodge* then states, "*Put differently*, a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Id.* (emphasis added) (internal quotation marks and citation omitted). *Dodge*, then, is consistent with the Supreme Court and Ninth Circuit's admonition that courts not evaluate the clearly established prong at too high a level of generality.

  *Dodge*'s reasoning bears this out. In *Dodge*, a high school principal threatened to sanction a teacher for wearing a "Make America Great Again" cap to a teacher training event. *Id.* at 774. The teacher sued the principal under § 1983, arguing that the principal had violated his First Amendment right to freedom of speech, and in response, the principal raised qualified immunity. The Ninth Circuit asked (i) whether the principal had violated the teacher's First Amendment right to freedom of speech under the *Pickering* test—whereby courts must balance a government employer's interests against an employee's freedom of speech—and (ii) whether, in that particular context, the right had been clearly established. At the first step, the Ninth Circuit held that the teacher's First Amendment right had been violated because "[p]olitical speech is the quintessential example of protected speech" and that the principal's "asserted administrative interest in preventing disruption" could not outweigh the teacher's paramount interest. *Id.* at 783. At the clearly established law step of the qualified immunity test, the Ninth Circuit cast the inquiry as "whether it is patently unreasonable for a school official to believe that she could lawfully threaten a subordinate's employment because he brought a political campaign hat to teach-only trainings after several teachers complained about the political messaging they

PAGE 9 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

attributed to the hat." *Id.* at 784. Answering that question, the Ninth Circuit explained that "it was patently unreasonable for [the principal] to believe that she could restrict [the teacher's] speech to quell what was, in reality, nothing more than the natural effect that disfavored political speech often has on those with different viewpoints." *Id.* The Ninth Circuit then catalogued five decades of cases all holding that "disagreement with a disfavored political stance or controversial viewpoint, by itself, is not a valid reason to curtail expression of that viewpoint at a public school" and concluded that those cases applied with "obvious clarity" to the principal's conduct, "[a]lthough those cases did not involve a MAGA hat." *Id.* at 785.

*Dodge* therefore reflects the appropriate, particularized scrutiny that qualified immunity demands: the Ninth Circuit considered the nature of the speech (unpopular political expression), the context in which that speech was made (public schools), and the school official's reaction to that speech (threats, suspensions, and expulsions). This Court must do the same and not merely ask whether the VERC Defendants were aware of general principles such as that "officials cannot impose regulations that are hostile to the religious beliefs of affected citizens" or that "[a] law targeting religious beliefs is never permissible." Pls.' Resp., ECF 8 at 24, 26 (internal quotation marks and citation omitted).[3]

///

///

---

[3] To be sure, there are cases where a constitutional violation might be so obvious and egregious that government actors may still be on notice in novel circumstances. *See, e.g.*, *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (holding that "no reasonable correctional officer" would have believed it to be constitutionally permissible under the Eighth Amendment's prohibition of cruel and unusual punishments to keep an inmate locked naked in a sewage- and feces-covered cell). This case is not one of those cases. *See MacDonald v. Or. Health & Sci. Univ.*, Case No. 3:22-cv-01942-IM, 2023 WL 529959, at *11 (D. Or. Aug. 28, 2023); *Mathisen v. Or. Health & Sci. Univ.*, Case No. 3:22-cv-1250-SI, 2023 WL 6147099, at *9 (D. Or. Sept. 20, 2023).

PAGE 10 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**B. Plaintiffs Did Not Have a Clearly Established First Amendment Right Under the Free Exercise Clause**

Engaging in the proper inquiry, this Court holds that Plaintiffs did not have a clearly established right. The relevant question here is whether it was clearly established under the Free Exercise Clause that, during a pandemic, the VERC Defendants were barred from (1) attempting to distinguish between religious and secular objections to a vaccine and (2) in that effort, denying exemptions to a state-mandated vaccine mandate to healthcare workers who expressed ostensibly religious objections to the use of fetal cells in the development of the vaccine.[4] *See MacDonald*, 2023 WL 529959, at *9 (similar query). To answer this question "yes," as explained above, Plaintiffs must show that "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation [the VERC Defendants] confronted," *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citation omitted), and that "existing precedent . . . ha[d] placed the statutory or constitutional question beyond debate," *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021) (quoting *al-Kidd*, 563 U.S. at 735).

Plaintiffs cannot carry this burden. Plaintiffs cite fourteen cases, but none could have given notice to a reasonable person in the VERC Defendants' position that she was violating Plaintiffs' clearly established constitutional right to the free exercise of religion. To start, three of the cases (*Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707 (1981); *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136 (1987); and *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829 (1989)), concern unemployment benefits, which are not at issue here, and

---

[4] This Court recognizes that Plaintiffs April Jimenez-Mendez and Khimich were working remotely following the onset of the COVID-19 pandemic, but it seems they sometimes worked in vulnerable settings as part of their employment and needed to work in-person at OHSU facilities. *See* Compl., ECF 1 ¶ 29 (explaining that Plaintiff Khimich was "mandated" to "come in and train a colleague" and that she caught COVID-19 during this training).

PAGE 11 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

have no bearing on the medical context of this case. *See MacDonald*, 2023 WL 5529959, at *10; *see also Emp't Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 883 (1990) (cabining these cases to "the denial of unemployment compensation").

Moreover, many of Plaintiffs' cases concern constitutional and statutory provisions other than the Free Exercise Clause. *See, e.g.*, Pls.' Resp., ECF 8 at 14 (discussing *Harris v. McRae*, 448 U.S. 297, 310–21 (1980) (expressly declining to consider a Free Exercise challenge because the appellees lacked standing to bring that claim)). Two cases—from which Plaintiffs quote observational dicta about the religious nature of certain objections to abortion—involve the (previously recognized) right to an abortion under the Fourteenth Amendment's Due Process Clause. Pls.' Resp., ECF 8 at 13–14 (first discussing *Roe v. Wade*, 410 U.S. 113 (1973); and then discussing *Doe v. Bolton*, 410 U.S. 179 (1973)). Another two involve claims by a private corporation and religious nonprofits under the Religious Freedom Restoration Act, which "Congress enacted . . . in order to provide greater protection for religious exercise than is available under the First Amendment," *Holt v. Hobbs*, 574 U.S. 352, 357 (2015). *See* Pls.' Resp., ECF 8 at 15–16 (first discussing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) (analyzing the Affordable Care Act's contraceptive mandate for employer health insurance plans); and then discussing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020) (administrative law challenge to religious exemptions issued under the Affordable Care Act)). And two others concern the Freedom of Speech Clause's prohibitions on government-compelled speech and viewpoint discrimination. *See* Pls.' Resp., ECF 8 at 17, 20 (first discussing *Nat'l Inst. for Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA*") (analyzing a law compelling crisis pregnancy centers to provide certain notices); and then discussing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995)

PAGE 12 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

(analyzing a university policy barring funding for "student journalistic efforts with religious editorial viewpoints," *id.* at 831)).

Cases concerning constitutional and statutory rights not at issue here could not have shown that Plaintiffs' Free Exercise "right's contours were sufficiently definite that any reasonable official in [the VERC Defendants'] shoes would have understood that he was violating it." *Sheehan*, 575 U.S. at 611 (citation omitted). Moreover, to the extent that Plaintiffs rely on the cases above for broadly applicable "governing principles," Pls.' Resp., ECF 8 at 13 n.3, this line of reasoning is foreclosed by the Supreme Court and Ninth Circuit qualified immunity precedent discussed above. *See supra* at 6–10.

In addition, Plaintiffs cite cases that post-date the alleged constitutional violations in this case—*Keene v. City and County of San Francisco*, No. 22-16567, 2023 WL 3451687 (9th Cir. May 15, 2023), and *Kennedy v. Bremerton School District*, 142 S. Ct. 2407 (2022)—and a Supreme Court concurring opinion, *NIFLA*, 138 S. Ct. at 2379 (Kennedy, J., concurring). But the qualified immunity inquiry depends on "existing precedent" at the time of the alleged constitutional violation, *al-Kidd*, 563 U.S. at 741—these three cases do not meet these criteria. *See Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021) ("[C]ases decided after the relevant conduct are of no use in the clearly established inquiry." (citation and internal quotation marks omitted)); *Maryland v. Wilson*, 519 U.S. 408, 412–13 (1997) (explaining that a statement "contained in a concurrence" does not "constitute[] binding precedent").

Plaintiffs cite only two cases involving the Free Exercise Clause that warrant more sustained discussion, but both involved factual circumstances meaningfully distinct from those present in this case. In *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, the Colorado Civil Rights Commission sanctioned a bakery shop owner for refusing to bake custom

PAGE 13 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

wedding cakes for gay couples. 138 S. Ct. 1719, 1725–27 (2018). The Supreme Court held that the Commission infringed the bakery shop owner's Free Exercise right by publicly demonstrating hostility toward his religious beliefs and "endors[ing] the view that religious beliefs cannot legitimately be carried into the public sphere or commercial domain." *Id.* at 1729–32. Here, in contrast, the VERC Defendants did not openly single out Plaintiffs' religious beliefs by, for instance, describing their views as "one of the most despicable pieces of rhetoric that people can use," as the Commission in *Masterpiece Cakeshop* did. *Id.* at 1730. Nor did the VERC Defendants openly question the compatibility of religion with the public sphere. Rather, the VERC Defendants implemented a policy that attempted, on its face, to separate "social, political or economic philosophies or personal preferences" from "religious beliefs." OHSU Email, ECF 1, Ex. B at 2. Plaintiffs have not presented allegations of an ulterior hostility to religion similar to the evidence considered by the Supreme Court in *Masterpiece Cakeshop*.[5]

   Likewise, Plaintiffs' reliance on *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) (per curiam) is unavailing. *See* Pls.' Resp., ECF 8 at 23–25. There, the Supreme Court held that restrictions on attendance at religious services were unconstitutional because they "single[d] out houses of worship for especially harsh treatment" relative to comparable secular places such as "acupuncture facilities, camp grounds [and] garages," *id.* at 17. *Cuomo* thus has no applicability here; it concerns the proper comparator to houses of worship under the Free Exercise Clause, not how government officials are to distinguish between an individual's religious and non-religious beliefs as the VERC Defendants attempted to do.

---

[5] Even Plaintiffs recognize that "[o]pposition to abortion . . . *often* is . . . religious in nature," Pls.' Resp., ECF 8 at 13, 19—necessarily meaning that not *all* opposition to abortion is religious. Thus, without more, OHSU's June 2022 press release stating that "Abortion is essential healthcare" cannot be construed as expressing religious animus, OHSU Press Release, ECF 1, Ex. A.

PAGE 14 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

In sum, Plaintiffs have not presented any case law that would have given sufficient notice to a reasonable person in the VERC Defendants' position that she was, beyond question, violating Plaintiffs' Free Exercise rights. *See al-Kidd*, 563 U.S. at 741.

Furthermore, as this Court has observed before, "at the time that the . . . VERC Defendants were promulgating and carrying out policies meant to ensure compliance with the state's vaccination mandate, governing case law clearly held that to be entitled to constitutional protection, religious beliefs must be both 'sincerely held' and 'rooted in religious belief' rather than 'purely secular philosophical concerns.'" *MacDonald*, 2023 WL 5529959, at *11 (quoting *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981)); *see Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972) ("A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular considerations; to have the protection of the Religion Clauses, the claims must be rooted in religious belief."). Thus, it was not unreasonable, as a matter of qualified immunity, for the VERC Defendants to enforce policies separating sincere religious objections to the vaccine from philosophical ones and to request information from applicants about their religious beliefs. *See Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) ("Whether qualified immunity can be invoked turns on the objective legal reasonableness of the official's acts." (citation and internal quotation marks omitted)).

* * *

For the reasons above, Plaintiffs cannot meet the high burden required to defeat qualified immunity, and this Court accordingly must dismiss Plaintiffs' First Amendment Free Exercise claim against the VERC Defendants. The claim is dismissed with prejudice, for any amendment would be futile. *See MacDonald*, 2023 WL 5529959, at *11–12.

PAGE 15 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

## CONCLUSION

This Court GRANTS Defendants' Motion to Dismiss, ECF 7. Accordingly, Plaintiffs' First Amendment Free Exercise Clause claim against the VERC Defendants is dismissed with prejudice. Plaintiffs' Title VII claims against OHSU for failure to accommodate and religious discrimination will go forward, as Defendants did not move to have them dismissed.

**IT IS SO ORDERED.**

DATED this 29th day of January, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge